Kile MacWherter, Petitioner-Appellee, v. Harold C. Turner, Respondent-Appellant.

Gen. No. 10,544.

Fourth District.

September 24, 1964.

271

Lloyd F. Latendresse, of Decatur, for respondent-appellant.

Earl R. Anderson, Ralph S. Pearman, Massey, and Anderson & Gibson, all of Paris, for petitioner-appellee.

ROETH, J.

This is an appeal from an order entered in an election contest by the Circuit Court of Clark County. At the November 1962 election petitioner Kile Mac-Wherter and respondent Harold C. Turner were opposing candidates for the office of County Treasurer of Clark County. The official canvass based upon the returns of the judges from each of the election precincts showed that MacWherter received 4,085 votes and Turner received 4,105 votes and the canvassing board thereupon certified Turner as having been elected. Aside from the total county vote, the official canvass showed that in Marshall Precinct 3 MacWherter received 423 votes and Turner received 559 votes. After the official canvas MacWherter sought and obtained a discovery recount as to 5 precincts. The discovery recount disclosed that as to Marshall Precinct 3, MacWherter's vote was 460 votes and Turner's was 523 votes, a sufficient difference to reverse the result of the election. MacWherter thereupon filed a petition to contest the election and sought an official recount only as to Marshall Precinct 3 on the ground that as a result of error or fraud the count of the judges was incorrect. Issue was joined on the petition and the court heard evidence as to the preservation of the ballots and then proceeded to recount the ballots in Marshall Precinct 3. At the conclusion of the recount it was determined that in said precinct Mac-Wherter had received 456 votes and Turner had received 523 votes. Projecting this count with the of-

ficial canvass count for the balance of the county gave MacWherter 4,118 votes and Turner 4,069 votes. The court then entered an order finding that an error or mistake had been made by the judges in Marshall Precinct 3 in counting the votes and that the true count was as shown by the court's recount. Jurisdiction was reserved to permit Turner to seek a recount of other precincts if he so desired. Turner then filed a petition to recount the remaining precincts of the entire county. This recount produced a negligible change in the total county vote with MacWherter having 4,121 votes and Turner 4,082 votes. A final order was then entered declaring MacWherter duly elected County Treasurer. This is the order appealed from. From the briefs of counsel we are concerned only with the recount of Marshall Precinct 3. The question for decision is further narrowed to a determination of whether the record shows a proper preservation of the ballots of this precinct to maintain their integrity as evidence.

 The principles of law governing a determination of this case are well settled. The returns of the judges of election are prima facie evidence of the result of the election, but the ballots are the original evidence of the votes cast, and in case of a contest are better evidence of the result if they have been properly preserved. The contestant is the moving party, and the burden rests upon him to prove that the ballots have been kept intact. If the evidence discloses that the ballots were exposed to the reach of unauthorized persons, and the returns are not discredited, the ballots will not be regarded as better evidence of the result of the election. It is not necessary for a respondent to show that there was actual tampering with the ballots, but it is sufficient to invalidate the ballots as evidence, that the opportunity for unlawful interference of *unauthorized persons* existed. How-

273

ever, if the evidence shows that there was no *reasonable opportunity* for tampering with the ballots, they are the best evidence of the result of the election. The question of whether the ballots have been properly preserved is in each action necessarily one of fact to be determined by the evidence. The most recent case announcing these principles is Armbrust v. Starkey, 3 Ill2d 131, 119 NE2d 910, in which case many prior decisions of the Supreme Court are cited. Many of the decisions so cited are those contained in the briefs of respective counsel in this case. We are therefore required to consider the evidence as disclosed by the record before us.

Marshall Precinct 3 was the last precinct to report at the election. The counting of the ballots was completed at approximately 4:45 a. m. After the ballots had been tallied and counted two judges, Robert McCourt and Lenwood Volk, took charge of them. McCourt testified they were placed in one or two piles (he couldn't remember which) and taped together with scotch tape furnished as a part of the election supplies. McCourt did the taping. The scotch tape was applied to the bottom ballot and brought around the pile of ballots to the top ballot. This was done on both ends of the pile of ballots. McCourt couldn't remember whether the sides of the pile of ballots were taped in the same fashion. Volk testified that the ballots were in one pile and were taped only on the ends. After the ballots were thus stacked and taped they were wrapped in brown wrapping paper and placed in a muslin bag. Both the muslin bag and the wrapping paper bore the signatures of all the judges. This bag had a drawstring which was pulled tight and tied. Volk and McCourt then placed this bag of ballots together with the bags containing the constitutional amendments ballots and the special tuberculosis tax ballots in a grain sack and proceeded to the county clerk's office. The polling place was across

the street from the courthouse. On their way to the county clerk's office McCourt and Volk did not stop at any place, the sack was not opened and the ballots were in the same condition when delivered to the clerk as they were when placed in the muslin bag. When they arrived at the clerk's office the county clerk, Mr. Kemp, was still there. The grain bag with all the ballots was deposited on the floor of a vault and the clerk gave a receipt for the ballots. Volk and McCourt left and as they did so the clock was striking 6:00 a. m. The clerk locked the vault door, which is a steel door controlled by a combination lock, and the door to the office and went home for breakfast.

At 7:45 a. m. the deputy county clerk arrived at the courthouse. She unlocked the door of the office and also the vault door. She noticed the ballot bags on the floor of the vault but did not touch them. At 8:00 a. m. an employee of the county clerk arrived. She was working on tax books and went into the vault to get her books. No one was in the vault at this time. Her desk was located opposite the vault door and as she sat at her desk she faced the vault door. Neither the deputy nor the employee could recall anyone being in the office or the vault prior to 8:30 a. m.

At 8:30 a. m. Kemp, the county clerk, arrived back at the office. He went into the vault and proceeded to put all of the ballot bags in a cabinet which is inside the vault and is referred to as an inner vault or locker. This cabinet has a lock on it and Kemp had the key for the lock. He testified that during the 20 years that he had been county clerk this key had never been out of his possession. The ballot bag for Marshall Precinct 3 was in the same condition as when deposited on the floor by Volk and McCourt and none of the ballot bags were opened by the clerk or his employees. When all the bags were placed in the cabinet it was locked and remained so locked until the discovery recount.

At the discovery recount the 3 members of the canvassing board were present when the Marshall Precinct 3 bag was taken out of the inner cabinet in the vault. The contents of the inner cabinet had not been disturbed. The lock on the inner cabinet had not been tampered with. The Marshall Precinct 3 bag was taken to the courtroom. The grain bag was tied with a string. The muslin bag containing the ballots was likewise tied with a string. The ballots were wrapped very securely in brown wrapping paper. The ballots were evenly stacked and fastened together very tightly with scotch tape on both ends. Each ballot contained the initial of an election judge. After the ballots were recounted they were re-wrapped in the same brown paper, and the package tied with a string. The members of the canvassing board then signed the brown wrapping paper, placed scotch tape over their signatures, replaced the ballots in the muslin bag and returned it to the grain sack which in turn was placed back in the inner cabinet of the vault. When produced in court on the contest hearing the bags and ballots were in the above condition.

It is first suggested by counsel for respondent that the ballots were not wrapped by the election judges in accordance with the provisions of Ill Rev Stats chap 46, sec 17–20. However, the rule is well established that the statutory provisions for preserving ballots are directory in the sense that the precise manner prescribed is not essential if there is a substantial compliance, and it is clearly proved that the ballots have been kept in the same condition as when counted and protected from any opportunity for interference with them. The disregard of the statutory provisions is not conclusive against their weight as evidence. Armbrust v. Starkey, supra, and cases cited.

As heretofore noted the question of whether or not the ballots have been properly preserved is a fact

question. From the record before us, we are of the opinion that ample precautions were taken to preserve the ballots, from the time of the completion of the count by the election judges to the time of the recount on the contest hearing, and that there was no reasonable opportunity for tampering with the ballots. Accordingly it is our conclusion that the circuit court of Clark County properly held the ballots were admissible in evidence, and its judgment that petitioner, Kile MacWherter, was the duly elected county treasurer is affirmed.

Affirmed.

CROW, P. J. and SMITH, J., concur.