**Alma Crum, Plaintiff-Appellee, v. Everett L. Green, Defendant-Appellant.**

Gen. No. 10,719.

Fourth District.

April 12, 1966.

Rehearing denied May 2, 1966.

Thomas J. Logue and Tom E. Grace, both of Mattoon, for appellant.

Dilsaver & Gilkerson, of Mattoon (George N. Gilkerson and Joseph R. Spitz, of counsel), for appellee.

TRAPP, P. J.

Defendant, Everett L. Green, appeals from a judgment of the Circuit Court of Coles County, Illinois, declaring plaintiff, Alma Crum, winner of the election for Township Supervisor of Mattoon Township.

Defendant's first contention is that his motion to dismiss the proceeding to contest the election should have been allowed for the reason that § 23–20 and § 23–26 of chap 46 (Ill Rev Stats 1965), are unconstitutional in that they permit a contest to be held and decided upon the results obtained in precincts specified by the plaintiff

contestant. The defendant in this case sought and obtained a recount of the ballots in all of the precincts involved in the election. If the contest proceeding was properly conducted, the defendant was not, in fact, elected to the office on the basis of all precincts involved in the election. We believe that defendant, having had a consideration of all precincts involved as a matter of right under the statutes complained of, was in no way injuriously affected by the statute, and therefore could not assert the unconstitutionality of the statute. The cases of Ryan v. City of Chicago, 369 Ill 59, 62, 15 NE 708; People v. Diekmann, 285 Ill 97, 101, 120 NE 490; and People v. Huff, 249 Ill 164, 169, 94 NE 61, sufficiently illustrate this principle.

Defendant complains that the ballots were not properly preserved and that, accordingly, the results announced by the judges of the election must be allowed to stand.

The parties stipulated as follows:

"It is hereby stipulated and agreed by and between the parties hereto, through their respective counsel, that after the polls had closed in the Township Election for the Town of Mattoon, Illinois, held on April 6, 1965, the ballots cast in said election were properly wrapped, sealed and secured in canvas bag containers by the respective judges of the election in each precinct and thereafter delivered to the Township Clerk of said Town at the Township office in the evening of said date.

"It is further stipulated that no proof will be required from the judges of the election as to the above facts."

There were 22 precincts and the ballots for each precinct were delivered to the town clerk in a separate corrugated box approximately 18 inches by 24 inches by 2½ inches. On April 7, 1965, the day after the election,

the canvass of the election was held and the boxes were stacked in one pile, according to precinct numbers, behind a cabinet in the office. On April 15, 1965, pursuant to a petition for discovery recount, the canvassing board conducted a discovery recount. The town clerk, Mr. King, testified that the ballots had been kept in the same place from April 6th to April 15th.

In the discovery recount each box was opened, the canvas bag removed from the box and opened. Mr. Slover, a member of the canvassing board as town assessor, then turned the package of voted ballots face down and checked for initials of the judges. The voted ballots were then handed to the clerk for counting the voted ballots. The ballots in the other envelopes, both disputed and spoiled, were examined after the envelopes were opened by Mr. Slover. The attorneys and members of the board discussed them. After the ballots in each precinct were counted, the clerk put the voted ballots back in the original brown paper package, sealed the package with scotch tape, placed the package in the canvas bag and tied them with a heavy string. The clerk tied each bag with two knots, a clove hitch and a square knot. He put each bag in its box and stacked them in the corner. On the discovery recount the clerk did not count any spoiled or defective ballots which had been contained in the envelopes marked spoiled or defective.

After the recount of April 15, 1965, the ballots remained in the boxes stacked in the same place in the town clerk's office until April 23, 1965, when they were turned over to Sheriff Paul Smith.

The town clerk testified that on April 6, 1965, other ballots, being the unused ballots, were brought to him by the election judges. They were separated by the clerk from the voted ballots, removed from the boxes and placed in one big box. The unused ballots were not picked up by the sheriff but were kept in the one big box and

249

were in the town clerk's office at the time of the trial. The unused ballots were not examined during the discovery recount.

Mrs. Alma Crum, plaintiff, was the incumbent town supervisor and had her office in the same building in the same room as the town clerk's office. The boxes containing the ballots were separated from the supervisor's desk by a cabinet. Mrs. Alma Crum did not touch the ballots during the discovery recount. When the town clerk delivered the boxes to the sheriff he put scotch tape around them.

At the time of the trial each box was handed to the clerk and examined and stated to be in the same condition as when handed to the sheriff on April 23rd, and each canvas bag was stated to be in the same condition as when retied by the clerk at the time of the discovery recount on April 15th. During the recount in court, the bag was cut separately as each precinct was counted, and each brown paper package containing the ballots removed, the seal broken and the package opened. At the trial the tally certificates, applications for ballots, and envelopes containing spoiled and defective ballots were observed, and in each case by precinct the ballots were rewrapped, resealed, replaced in the bag and replaced in the box. Before opening each bag, the clerk testified that it was tied in the same way he tied it on April 15th.

There was no evidence offered of any tampering with the ballots and there was no physical indication that this had happened.

This court has compared the results of the ballots counted on the canvass, and the ballots counted by the court on trial, without regard to the rulings of the court on the ballots objected to at the trial. It appears to this court that the canvassing board and the trial court had to examine the same ballots. The applications for ballots and total ballots observed appear to conform in every

instance except as herein noted. In Ward 3, Precinct 2, there are two more ballots than applications. There was one torn ballot loose in the bag but not marked spoiled, and the envelope for spoiled ballots stated that one was contained therein but none was found therein. In Ward 6, Precinct 1, there were three more ballots stated to be cast than applications. There were 260 applications. However, three ballots were not counted for either candidate, and three were contained in the defective ballot envelopes and not counted. Whether a judge misinterpreted the count in stating that 263 ballots were cast is unknown. Only 260 ballots were counted and only 257 counted for the candidates with three counted for neither candidate. In Ward 8, Precinct 2, there was one more ballot noted as cast than the applications. However, one spoiled ballot, so marked on the envelope, was not found and could possibly have been counted in the votes cast.

The tally of votes applied for, cast, counted and observed was so close as to confirm the other testimony that the ballots had been properly preserved.

■ ■ We do not agree that the testimony shows that unauthorized persons had access to the ballots. In nearly every case it is possible that someone who was not authorized could have access to the ballots. We believe that this principle must be taken to mean access which would enable one to tamper with the ballots without the result being observed. All of the facts and circumstances must be considered. Any person who tampered with the ballots in this case would have to untie the bags or cut them and unwrap the sealed packages of ballots and reseal them. In the case of Talbott v. Thompson, 350 Ill 86 at p 92, 182 NE 784, the public was admitted to the vault to examine other records without restraint, the bags containing the ballots were open and unsealed, part of the ballots were stacked against a grill and a hand could be inserted between the bars and persons in the vault could have

access to ballots without being observed by the clerk in charge of the office. In Bolton v. Whalen, 350 Ill 50 at 57, 182 NE 780, there were broken seals on bags, numerous erasures on tallies not made by a clerk of the election, bags opened and resewed, resealed bags, finger prints on ballots which had been clear and other evidences of tampering. We think the present case more nearly approaches the factual situation in Bullman v. Cooper, 362 Ill 469 at 472, 473, 200 NE 173.

 It is next contended by the defendant that the trial court erroneously excluded 20 ballots in Precinct 3 of Ward 2 upon the ground that the ballots did not contain initials of an election judge. Exclusive of these 20 votes, appellant Green gained 6 votes on the court recount and appellee Crum gained 8 votes. Therefore, except for these 20 uninitialled ballots (of which 16 were voted for Green and 4 for Crum) being excluded, Crum would have remained the victor. The 20 uninitialled ballots are said to be absentee voters, because the ward and precinct designation was printed on ballots of those who voted at the polls, and an ink designation of the ward and precinct was placed on absentee ballots. Appellant offered to bring in the absentee voters to show how they voted. It is contended that the voter should not be deprived of his right to vote because of the failure of the judges to initial the ballot. We hold that the case of Morandi v. Heiman, 23 Ill2d 365, 178 NE2d 314, is controlling and that the trial court was correct in rejecting the uninitialled absentee ballots in Ward 2, Precinct 3. In addition to this authority, it occurs to us that to identify particular ballots or groups of ballots by marks and to permit testimony of the alleged voters of these ballots as to how they voted would create additional undesirable policy problems with regard to elections.

Appellant contends that it could be established by party affiliation which candidate the absentee voter voted for

and cites Talbott v. Thompson, 350 Ill 86 on 97, 182 NE 784. We do not interpret this case to mean that an un-initialled ballot may be counted because the case holds the contrary. The question in the Talbott case was rather what votes should be eliminated.

Defendant further contends that spoiled ballots were mixed with good ballots. Since defendant's tabulation shows that only two spoiled ballots could have been mixed with good ballots (because 2 spoiled ballots that were supposed to be in envelopes were not found), these could not have changed the result of the election. Neither would crediting every irregular finding in reference to Ward 3, Precinct 2, Ward 6, Precinct 1, and Ward 8, Precinct 2 against appellee Crum give the election to appellant Green.

Defendant also contends that since no accounting was made of the unused ballots, such were not properly preserved. Assuming, as we do, that an unused ballot is a totally unused ballot, even if such ballot was mixed with good ballots, this fact, although constituting an irregularity, cannot affect the count of the election. The evidence does show that the unused ballots have been preserved, however informally. Chap 46, § 17–16 (Ill Rev Stats 1963), provides that unused ballots and ballots "spoiled by voters while attempting to vote" shall be returned by the judges to the authority charged with distributing the ballots, and that such shall be preserved for two months. There is no such specific statutory requirement as found in Chap 46, § 17–20 (Ill Rev Stats 1963), with regard to ballots that have been in the ballot box, i. e., ballots which have been counted or which have been designated defective or objected to. As to these there are specifications for wrapping and sealing and securing them in a sealed canvas cover with provision for immediately delivering them to the responsible clerk by two of the judges.

■ There being such an apparent distinction in the statutory provisions, it would seem that § 17–16 regarding the preservation of unused ballots is essentially directory, for such section does not expressly provide that the unused ballots shall be preserved in a prescribed manner, and it does not appear that the irregularity renders doubtful the evidence upon which the result is declared. Morandi v. Heiman, 23 Ill2d 365, 178 NE2d 314.

■ ■ Lastly, defendant contends that since appellee Crum was an elected officer who had a key to the office where the ballots were kept, the ballots were automatically not properly preserved. We cannot agree that in every case where an elected officer could obtain access to the ballot packages, the ballots are not properly preserved. Each case of ballot preservation is a matter of proof by the contestant. We believe that in this case the testimony shows the preservation of the ballots as nearly as they could be in their original form. That care was taken at each step to so preserve them is undisputed. The court count is so close to the canvass count except for the known changes based upon rulings on particular ballots as to be confirmatory of the testimony as to preservation of the ballots.

The judgment of the Circuit Court of Coles County is affirmed.

Affirmed.

SMITH and CRAVEN, JJ., concur.