ORAL BETHARD, Petitioner-Appellant, *v.* LOYD MINK, Respondent-Appellee.

(No. 11612; ▮▮▮▮▮▮▮▮▮▮

Fourth District—April 2, 1973.

John F. Adams, of Goehl & Adams, of Quincy, for appellant.

Brice Irving, of Grigsby & Irving, of Pittsfield, for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Upon hearing, the trial court found that petitioner had failed to prove that the ballots had been properly preserved and safeguarded and dismissed the petition to contest the election of County Treasurer. Petitioner appeals.

Petitioner sought a recount of the votes as shown by the ballots in three precincts known as Barry II, Kinderhook I and Pittsfield IV.

Lightle, County Clerk, testified that on November 3, 1970, the night of the election, the ballots from the first precincts were brought to his office commencing at 9:00 P.M., that the ballots were being received all night and the final ballots were received about 8:00 A.M., November 4th. From time to time, usually after records from three precincts had accumulated, they were carried from the Clerk's office on the first floor, to a room in the basement. Lightle had a heart condition and one Strothers helped him, the Clerk carrying part of the ballots and Strothers carrying part of them. He also testified that he carried the ballots part of the time, and Strothers carried the ballots part of the time.

The ballots were placed in an inner room for which there is a key, but which was unlocked until the last records were in on November 4th. The outer room is a room used by the Supervisor of Assessments. Also, on the basement floor is a men's rest room, a Civil Defense room, a boiler room and a room used by the Treasurer. A person going to the rest room could open a door to the part of the basement in which the ballots were stored, the door to the men's rest room being directly opposite the door to the room into which the ballots were being carried.

There were people coming into and going out of the courthouse all night. The Clerk estimated that between 200 and 300 people were in and out of his office during this election. The door to the inner room was locked after the last ballots were brought in, and the ballots were kept locked in there until November 14th, when there was a discovery proceeding.

At the time of the discovery proceeding the Clerk brought the ballots from eight precincts up from the basement, untied the  bags and unwrapped the ballots. The seal used in addition to the string was scotch tape. After the discovery, the Clerk rewrapped, retied and resealed the ballots from these precincts. He stated that after they were retied one could not tell the difference in their appearance, and their appearance when delivered to him on election night.

After discovery proceedings, the ballots from the eight precincts and also from the other 27 precincts were taken to a vault in the County Clerk's office on the first floor of the courthouse and were kept there until the trial. The key to this vault was delivered to the present Clerk by his predecessor. The vault door was unlocked during business hours because documentary stamps and other records are kept in the vault. All of the Clerk's employees have access to the vault. Between the election and the time of the trial several offices in the courthouse were broken into, but the manner of entering had not been discovered. There is no evidence that the County Clerk's office had been broken into. The Clerk

found the door to his office unlocked, but he was satisfied the new janitor left it unlocked.

The Clerk testified that the bags containing the ballots gave no appearance of having been tampered with, that he has received no reports of tampering with the ballots, that there were no reports of anyone entering the room where the ballots were stored on the night of the election, and no reports of anyone disturbing the ballots while they were in the vault in the Clerk's office after the discovery proceeding.

While the statute provides that the precinct judges of the election shall elect two judges (one from each of the major political parties) to return the ballots to the Clerk (Ill. Rev. Stat. 1969, ch. 46, par. 17—20), the ballots of two of the precincts sought to be recounted were not guarded in the manner provided by the statute. The ballots from Pittsfield precinct IV were delivered by Harold Hayden, a Republican Judge, who was alone at the time of the delivery about 8:00 A.M. November 4th. The ballots from precinct Barry II were delivered to the Clerk by Thorton Reeves, a Republican Judge, and Oral Bethard, the petitioner.

The trial judge, by stipulation of counsel, viewed the route which the Clerk and Strothers followed in carrying the ballots from the Clerk's office to the storage place in the basement, the proximity of the rooms involved and their accessibility to the general public.

■■ Counsel do not disagree upon the applicable rules. The returns of the judges are *prima facie* evidence of the result of an election but the ballots are original evidence, and if they have been preserved in the manner prescribed by statute, are better evidence of the result of the election. The Supreme Court, in *Bullman v. Cooper*, 362 Ill. 469, on 473, 200 N.E. 173, said:

> "If it clearly appears that the ballots are in the same condition when offered on the hearing as when they were counted by the judges of election, the re-count made by the court must prevail, and any discrepancies in the votes certified will be attributed to the errors of the election officers. (*Bolton v. Whalen*, 350 Ill. 50). Conversely, if the evidence shows that the ballots were exposed to the reach of unauthorized persons, and the returns are not discredited, the ballots will not be regarded as better evidence of the result of the election. * * *."

■■ The burden is upon the contestant to establish that the ballots are in the same condition as when counted by the judges, and that no actual evidence of tampering with the ballots is required if the ballots were actually exposed to the reach of unauthorized persons. Here, the ballots were not properly preserved in two of the three precincts in ques-

tion in their transportation from the polling place to the Clerk's office. Additionally, the complete exposure for unstated periods of time during the eleven hour interval between the receipt of the first and last ballots when hundreds of persons were in and out of the courthouse is clearly an exposure to the reach of unauthorized persons. The manner of sealing the bags was by no means foolproof, and the testimony was that it would take about five minutes to open a bag.

The test appears to be exposure to tampering rather than evidence of actual tampering. We find that the evidence supports the trial court's finding of exposure to tampering.

The judgment of the trial court is affirmed.

Affirmed.

SMITH, P. J., and SIMKINS, J., concur.