JAMIE S. GIBSON, Petitioner-Appellee, v. KANKAKEE SCHOOL DISTRICT 111 et al., Respondents.—(ANTHONY REED et al., Respondents-Appellants.)

(No. 74-367;

Third District—December 31, 1975.

*Rehearing denied February 5, 1976.*

Aldus Mitchel, of Chicago, for appellants.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago, and Sheldon Reagan, of Kankakee (Paul Leeks, of counsel), for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is a proceeding under section 9—21 of the School Code (Ill. Rev.

Stat. 1973, ch. 122, § 9—21) to contest the results of an election held April 13, 1974, for three members of the Board of Education of Kankakee School District 111 in which the names of five candidates were printed on official paper ballots. Notice of the election and the boundaries for 13 voting precincts established by the board were published March 15, 1974, as required and authorized by section 9—11 of the School Code (Ill. Rev. Stat. 1973, ch. 122, § 9—11). The canvass of the voting in the 13 precincts disclosed a total of 1644 votes and that the five official candidates received votes as follows: petitioner, Jamie C. Gibson, 658; J. Scott Swain, 762; Byron J. Wallace, 763; Anthony Reed, 865; and William S. Johnson, 789. Twenty-four others received write-in votes, the most received by any one of them being three.

In precinct 2, the number of total voters certified by the judges of election was 560, and their votes cast as follows: Jamie C. Gibson, 27; J. Scott Swain, 25; Byron J. Wallace, 26; Anthony Reed, 469; William S. Johnson, 385, and one write-in vote for each of two different individuals. By resolution of canvass of the Board of Education on April 15, 1974, Byron J. Wallace, Anthony Reed and William S. Johnson were declared elected.

On May 14, 1974, within the time permitted by statute (Ill. Rev. Stat. 1973, ch. 122, § 9—21, and ch. 46, § 23—20), petitioner commenced this cause by verified complaint; by a subsequent amended pleading filed June 12, 1974, he alleged that he "is informed and does believe that fraud, mistake and irregularities" occurred in precinct 2 in that (a) unregistered voters were permitted to vote, contrary to mandatory requirements of section 9—3 of the School Code (Ill. Rev. Stat. ch. 122, § 9—3); (b) unqualified voters were permitted to vote; (c) ballots included in the official count were not marked according to law, and (d) ballots marked according to law were not included in the official count. The pleading sets out by exhibit the numbers of votes counted for each candidate in each of the 13 precincts and alleges that as a result of the aforedescribed "fraud, mistake and irregularities" in precinct 2, petitioner is a legally elected member of the board. It prays a recount in that precinct only and that an order be entered setting aside the resolution of canvass by the Board and that a certificate of election issue to him.

After a lengthy hearing before the court, an order was entered August 21, 1974, finding in respect to precinct 2 that:

138 unregistered persons voted;

34 persons voted who were registered at an address different from the application;

34 persons voted without having signed the required voters' affidavit;

508 persons made application to vote and the canvass reports 560 voted;

29 ballots were declared defective while the total for all 13 precincts is 47.

The order then recites that "these many statutory violations constitute *weighty* evidence of fraud, though no specific fraud is charged or established," and that it was impossible to apportion the illegal votes. Relying on the decision in *Drolet v. Stentz*, 83 Ill.App.2d 202, 227 N.E.2d 114 (3d Dist. 1967), the court excluded the entire results in precinct 2 from consideration and after surcharging each of the official candidates with the respective totals reported for this precinct, decreed that Jamie C. Gibson, J. Scott Swain and Byron Wallace are the elected members of the board. Candidates Anthony Reed and William S. Johnson, each of whom received their heaviest support from precinct 2, where the total votes cast more than doubled the highest total cast in any other precinct, and was more than five times greater than the total votes cast in each of ten other precincts, appeal the order excluding consideration of all the votes cast in precinct 2.

A number of issues are raised in respect to the sufficiency of the amended complaint and various orders denying respondents' motions to dismiss. Because of the view we take of this appeal, however, it is unnecessary to consider these issues. The record manifestly fails to support the findings of fraud and does not support the order disenfranchising the votes of all persons voting at precinct 2.

The School Code (Ill. Rev. Stat. 1973, ch. 122, § 9—2) recites that the provisions of the Election Code (Ill. Rev. Stat. 1973, ch. 46) shall *not apply* to any school election unless expressly otherwise provided. At section 9—4 of the School Code, it is expressly provided in the first sentence of that section that "registration of voters shall be required * * * if the school district * * * includes all or part of any city having 80,000 or more inhabitants *and having a board of election commissioners.*" (Emphasis added.) (See Ill. Rev. Stat. 1973, ch. 46, § 18—1.) No contention is made that this provision was applicable here, or that a board of election commissioners was required to provide for registration of voters for this school election. See Ill. Rev. Stat. 1973, ch. 46, § 18—1 *et seq.*

In the second sentence of section 9—4 of the School Code, added in 1967, it is recited that:

"In all other elections [i.e., where a board of election commissioners is not required to provide for registration of voters for a school election] *voters are required to be registered to vote in general elections from a residence located* [not within any particular

school precinct, but] *in the school district * * *."* (Emphasis added.)

Where registration of voters for a school election is mandated under the first sentence of section 9—4, the judges of election are required to be furnished at the polls with an official registry of qualified voters for their respective precincts. See Ill. Rev. Stat. 1973, ch. 46 § 18—1 *et seq.* When a person makes application to vote, he is required to sign a certificate of the kind described at section 4—22 of the Election Code (Ill. Rev. Stat. 1973, ch. 46, § 4—22), and the judges are directed to compare the signature of the applicant with the registry to make sure of the applicant's qualifications and that his registration is complete. If the registration is found to be incomplete, an election judge should and any legal voter may, challenge the applicant's right to vote, and he shall not be permitted to vote unless he executes an affidavit required by section 17—10 of the Election Code (Ill. Rev. Stat. 1973, ch. 46, § 17—10), and offers further proof by oath of a witness. The failure of the election judges in such instance to compare the signatures of voter applicants against the precinct registry and to challenge those where registrations appear incomplete could constitute evidence of fraud on the part of election officials. In *Drolet*, which involved a general election, the failure of the election officials to perform this duty, together with evidence of other serious irregularities on their part, including allowing an unknown number of persons to vote twice, was held evidence of fraud *on the part of the election officials.* And since it was impossible in that case to ascertain *the number of illegal votes,* apportionment was impossible so that the results of an entire precinct were excluded out of necessity.

■■ Where, as in the case at bar, the registration of voters by an election commission for the school election was not required, there exists no provision in the law that the judges of election be furnished an official registry of qualified voters or any school precinct files of voters registered for general elections. There is no requirement that school precincts established by the school board should conform with the boundaries of political precincts established for general elections. Accordingly, general election precinct registries would be of little use. It is undoubtedly for this very reason that there exists no evidence in the record here that the judges of election had available to them at the polls any official record of registrations as a means for challenging the application of any prospective voter. Where, as in this case, the registration of voters for the school election, within the meaning of the first sentence in section 9—4 of the School Code, was not required, the judges of election were di-

rected under provisions of section 9—9 to provide, as they did, an official ballot to any applicant who would execute and present an affidavit under the form prescribed certifying himself to be a qualified voter. While a qualified voter is defined at section 9—3 of the School Code as one registered to vote in general elections from a residence located *in the school district* (rather than from a residence in the school precinct), no means existed in this election for a judge of election to challenge the application of any applicant certifying as to the completeness of his registration except on the basis of the judge's own personal knowledge or belief that the affidavit was false or incorrect. There is no evidence whatever in this record that any judge of election at precinct 2 permitted any applicant to vote without challenge in any instance where he or she had personal information, knowledge or belief that the voter's affidavit was false; nor is there any evidence that any legal voter or watcher made a challenge to any applicant at precinct 2 whom the judges nonetheless wrongfully permitted to vote without requisite proof. Thus, even if we were to consider it as proved in this case, that 138 persons voted at precinct 2 after signing the requisite affidavit, when in fact they were not registered to vote at general elections from any residence in the district, that fact does not in this case constitute any evidence of fraud or irregularity *on the part of the election officials.*

The circuit court also erred in concluding that the votes of 34 persons who were shown to have been registered within the school district but at an address different than shown on their applications were illegally cast, and that such facts constituted evidence of fraud *on the part of election officials.* The applicable provisions of section 9—3 of the School Code (Ill. Rev. Stat. 1973, ch. 122, § 9—3) requires only that a qualified voter be registered to vote in general elections *from a residence located in the school district.* It is not shown by the evidence that these voters resided at an address outside of precinct 2.

■■ The voters' affidavits in this case conformed with the requirements of section 9—9 of the School Code which specifies that the affidavits used in qualifying voters may include the signatures of one or more voters and shall be sufficient if signed by the voter and properly certified. Pursuant to section 9—14, the affidavits to vote required under section 9—9 constituted the poll book or list. Accordingly, each of 20 voter affidavit forms for signatures of applicants was furnished the election judges at precinct 2 and each affidavit contained blank lines for the signatures of 25 voters. The judges of election reserved the 20th form to list the names of two absentee voters whose ballots were counted. After the first 19 forms were completely filled, the judges permitted 34 voters

to sign on the back of affidavit number 19, and on the front of that affidavit form no. 19, where the signatures of 26 persons appear, an election judge wrote the word "over" at the bottom of the page to indicate her certification that the 34 persons on the back side had also subscribed to the oath which she administered. The circuit court erred in concluding that the votes of these 34 persons who were certified as having subscribed to the oath on the back side of the form were illegal votes, or that this procedure was violative of law or constituted an irregularity evidencing fraud.

■■ Section 9—14 of the School Code provides that the name of each elector voting shall be entered upon the poll book in regular succession and the number of such voter placed opposite his name. Accordingly, a number was placed in regular succession opposite the name of each of the voters who signed on one of the 19 affidavit forms constituting the poll list. In writing these numbers in succession, a purely clerical error was made in that following the number 449, the next successive number was written as 500 rather than 450. The names of the two absentee voters who were listed on form 20 were also shown on the back of form 19. Accordingly, eliminating this duplication and making allowances for the clerical error in skipping 50 numbers, it can be determined from the face of the documents that the actual number of voters who cast ballots was 508 rather than 560. This purely clerical error was carried over by the judges on their certificate of results and although normally corrected ultimately, appears to have been overlooked in the canvass. We conclude that this obviously clerical irregularity does not evidence fraud on the part of the election officials.

■■ The circuit court erred also in concluding, without even opening or examining the ballots, that the mere fact that 29 ballots for precinct 2 were certified as defective was evidence of fraud where the total certified as defective for all 13 precincts was only 47. This evidence is equally consistent with the conclusion that the judges of precinct 2 were more astute than in the other precincts or that the population in precinct 2 included more persons with less learning than other precincts. An obvious explanation is that while there were 508 ballots cast at precinct 2, the next highest vote was in precinct 13 where 203 votes were cast. After that the next highest total was 163 at precinct 12, and the next was precinct 7 where 100 votes were balloted. Each of the other precincts had fewer than 100 votes. In precinct 8, the total vote was 20, two of which were declared defective. Accepting that ratio as reasonable and applying it to precinct 2, it would be an acceptable proportion if there would have been 50.8 defective ballots in precinct 2 rather than only 29.

■■ There is a presumption of validity to the acts of election officials.[1] The total vote of a precinct ought not be disenfranchised unless the proof of irregularities is so clear, and their character so serious or numerous, that the number of legal votes cannot be ascertained and separated from the illegal ones, in which case disenfranchisement of an entire precinct cannot be avoided. (*Drolet v. Stentz; Lehman v. Hill*, 414 Ill. 173, 111 N.E.2d 120 (1953). The record here shows no fraud whatever *on the part of the election officials* at precinct 2, and the finding and judgment to the contrary by the circuit court, that fraud permeated the whole ballot box, is manifestly unsupported by the facts and the law.[2]

The final question is whether in the absence of fraud on the part of the election officials, the 138 persons who voted without challenge upon their own certifications as to their registrations may be declared as having voted illegally upon the oral testimony of the county clerk's Deputy Registrar that she could not find their completed registrations in the master files, and without giving any such voters an opportunity to offer as evidence the proof that might have entitled them to vote had they been challenged at the polls. We need not decide this question.

■■ Where the legality of votes cast is attacked on grounds not affecting the vote of the entire precinct (*i.e.*, where fraud of the election officials permeating the entire ballot box is not demonstrated), the burden of proving for whom the illegal votes were cast, and that they were sufficient in number to change the results of the election, falls upon the contestant. Where, as here, the contestant has failed to meet that burden, his petition fails. (26 Am. Jur. 2d *Elections*, § 342, at 161 (1966).) Moreover, even if it were to be accepted as the correct rule that apportionment of an ascertainable number of illegal votes is appropriate where it cannot be demonstrated for whom they were cast (*Thornton v. Gardner*, 30 Ill.2d 234, 195 N.E.2d 725 (1964)), petitioner would still not be entitled to the relief prayed. Assuming the 138 ballots were proved illegal, the maximum number of illegal votes would be 414 since each voter could vote for 3 candidates. If a percentage of this number were to be proportionately surcharged among the various candidates who received votes in precinct 2 and the total spoiled ballots reported,

---

[1] At 26 Am.Jur.2d *Elections* § 343, (1966), it is stated to be generally accepted law that "[e]very reasonable presumption will be indulged in favor of the validity of an election" including that the election officials knew the law and legally discharged their official duties and that their certificate of results is correct.

[2] "An issue of actual fraud is wholly unsustained by evidence of mere irregularities * * *." 26 Am.Jur.2d, *Elections*, 349.

petitioner would not be entitled to a decree ordering issuance of a certificate of election to him.

Courts are reluctant to disenfranchise an entire precinct (*Leach v. Johnson*, 20 Ill.App.3d 713, 313 N.E.2d 636 (5th Dist. 1974), and will do so only where the proof plainly requires it to protect the integrity of an election. We think the circuit court erred on this record in vacating the resolution of canvass of the Board of Education and in ordering that a certificate of election issue to contestant.

Accordingly, the judgment of the circuit court is reversed.

ALLOY and STENGEL, JJ., concur.

## ORDER DENYING PETITION FOR REHEARING

The finding of the circuit court and the evidence demonstrates that 34 persons on their applications to vote at precinct 2 listed addresses within precinct 2 but which were different from the addresses listed on their respective voter registration cards. There was no finding, evidence or claim that the addresses listed on the registration cards were outside of the school district. In such circumstance, these 34 votes were legally cast. Appellee errs in asserting on petition for rehearing that these 34 persons "voted at addresses different from that on their application[s] to vote * * *," and this assertion is contrary to the facts stated in appellee's original brief.

Appellee also asserts error was made in failing to "declare as elected the person who shall appear to be duly elected even if it is not the Petitioner." The prayer of the amended petition was confined to the issue of overruling the resolution of canvass by the Board of Education for the purpose of declaring petitioner duly elected and to order that a certificate of election issue to him; we decline to consider for the first time on petition for rehearing, an amended prayer for broader relief.

The *Drolet* decision is fully compatible with the rule that an entire precinct ought not be disenfranchised unless irregularities *on the part of election officials* are so clear, serious and numerous as to make such a result unavoidable. Accordingly, we adhere to our original decision without modification and order that the petition for rehearing be and the same is hereby denied.