LOUIS WHITSELL *et al.*, Petitioners-Appellants, *v.* HAROLD DAVIS *et al.*, Respondents-Appellees.

Fifth District   No. 78-74

Opinion filed December 18, 1978.

H. Carl Runge, Jr., of Runge & Gumbel, P. C., of Collinsville, for appellants.

Callis and Hartman, of Granite City (David H. Adamson, III, and Lawrence T. Hartman, of counsel), for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:
This matter was originally brought in the circuit court of Madison County by the petitioners, Louis Whitsell, Loren Madison, Kenneth Geisen, Helen Hawkins and Harlan Pervan, who shall be hereinafter referred to as "Petitioners," to set aside or otherwise affect the result of a

township election held in Nameoki Township, Madison County, on April 5, 1977. The court below found in favor of the respondents-appellees Harold Davis, Carl Macios, Lee Adams and Norman Hessler, hereinafter referred to as "Respondents" and entered its order denying the relief requested. From the court's order, the petitioners, Whitsell and Madison, have brought this appeal.

This matter was originally filed on April 27, 1977, by the petitioners, contesting the township election which had been held on April 5, 1977. The township consists of 11 precincts. The petitioners contest the conduct in six of the precincts, but not in the remaining five. They contend that significant irregularities occurred. The respondents deny such to be the case. The matter was tried in the court in a three-day trial. At the conclusion of the trial, both parties submitted briefs. The court filed its order on November 15, 1977, denying the relief sought by the petitioners.

Because the court's order fully sets forth the matters in dispute and the findings contained therein are supported by the record, it is set forth below as entered. The six precincts which are in dispute are Nos. 1, 4, 5, 6, 8 and 11. The court in its findings discussed each separately:

## "PRECINCT ONE

The tally sheets show that when the defective ballots and ballots cast are added together, the tally sheet shows two additional ballots; however, the Court finds pursuant to the testimony of Town Clerk, and pursuant to the examination of other tally sheets that said defective ballots were counted as ballots cast and no additional ballots exist.

THE COURT FURTHER FINDS no irregularity on the face of the tally sheet; but, on the contrary, finds that the minor changes on the tally sheets reflect the efforts of the election judge to correct their count. The Court further finds that Respondents have shown no reasonable opportunity for anyone to have tampered with the tally sheets.

## PRECINCT FOUR

THE COURT FINDS that five ballots are missing; however, the Court finds absolutely no evidence on which to make the decision that the loss of ballots were occasioned by anything other than honest mistake or miscount, and further finds no evidence on which can make a finding of fraud, deceit or foul play.

## PRECINCT FIVE

THE COURT FINDS that no additional ballots were shown to exist in Precinct Five and pursuant to the testimony of the Town Clerk finds that the tally sheet is accounted for by the exclusion of defective ballots.

The Court finds that one ballot appears to be missing, but as explained by the attorney for the Petitioners, that no showing other than that of an honest mistake has been shown. The Court further finds no credible testimony to establish any reasonable possibility that the ballots were tampered with by any person. The Court further finds not even a scintilla of evidence on which to conclude that there was any fraud or deceit.

## PRECINCT SIX

THE COURT FINDS that all ballots in this Precinct are accounted for. The Court further finds that Petitioners have not shown any reasonable opportunity that any unauthorized person ever had access to the ballots. The Court finds no evidence to conclude or speculate the existence of any fraud or deceit.

The Court finds that only inadvertent noncompliance has been shown with absolutely no effect upon the legitimacy of the election.

## PRECINCT EIGHT

THE COURT FINDS no additional ballots cast in the Precinct, all differences being reconciled by the reasonable explanation of the Town Clerk.

The Court finds no basis to conclude any wrongful conduct by the fact that on one of three tally sheets, an election judge changed from ink to pencil, nor have Petitioners established any statutory violation in that regard.

The Court finds that a guardrail was not constructed; however, the Court finds no way in which that failure affected the election. The Court further has concluded based upon the applicable case law that said provisions are directory.

The Court finds that some ballots were pre-initialed; however, the Court finds that the pre-initialing of ballots is customary and had no effect upon the election. The Court further finds that the pre-initialing of ballots is designed to facilitate voting.

The Court, after viewing the demeanor of the witness called upon behalf of the Petitioners, finds that the ballots marked with either a printed or written 'O.B.' were marked by Olivia Bourbon, an election judge.

The Court finds that Donald Patrick did not leave the polling place. The testimony showed that Patrick left the area of the voting booths to call the Town Clerk with regard to a problem ballot; however, the evidence clearly establishes that at no time did Patrick leave the store functioning as a polling place.

Evidently, Michael Briggs had been told by two voters that he had received their votes. He inquired of Patrick on the evening of

the election. Mr. Patrick certainly lacked definiteness in his testimony. Both ballots lacked an 'x' beside the write-in candidate's name. The demeanor of the witness and cross-examination indicated a definite lack of certainty. The Court does find that the two ballots were at the polling place on the night of the election and were properly preserved.

The Court finds an error in the count on the evening of the election to have been cured by the count of the Election Commissioners.

### PRECINCT ELEVEN

THE COURT FINDS that Mrs. Simmons pre-initialed minor groups of ballots to facilitate the ability of voters to cast ballots in accordance with the local custom as evidence in the entire testimony. The testimony is clear that the ballots were never left unattended by the other judges. The fact that Mrs. Simmons had to go to the bathroom during a twelve-hour period holds no significance to this Court; and the Court notes that Petitioners asked absolutely no questions concerning whether she signed in or not pursuant to the statute.

The testimony clearly shows the ballots were transported by judges to the Town Clerk who carefully secreted the ballots. The Court finds in this Precinct, as in the others, that Petitioners have failed to show that any individual had a reasonable opportunity to tamper with the ballots.

The Court finds the tally sheets and number of ballots cast to be in complete balance.

The Court finds that Clerene Coggins moved ballots approximately six feet to recount; however, the Court further finds that the ballots were always in view of all election judges and challengers. The Court further finds that the ballots were never moved to a table other than an adjoining 'T' table; nor were they left unattended based upon the clear preponderance of the evidence and after viewing the demeanor of the witnesses.

The Court finds that no one other than election judges handled the ballots based upon the obvious preponderance of evidence, nature of the testimony, and giving consideration to the demeanor of all witnesses.

The Court finds no conflict of interest by Mrs. Teetor nor has this Court been directed to any subsection of Section 3, Chapter 102, Illinois Revised Statutes, 1975, alleged to have been violated. The Court further finds absolutely nothing to indicate any impropriety by said judge.

The Court finds that pursuant to the testimony of the Town

Clerk he did send information to the election judges. The Court finds no error by the County Board of Supervisors in selecting Mrs. Simmons. The Court, additionally, notes that Petitioner, Louis Whitsell, is a member of that body.

The Court finds all other allegations of the Petition wholly without basis in the evidence and totally ignored by Petitioners in the Memorandum.

THE COURT FURTHER FINDS that the election for Township Supervisor and Assessor of Nameoki Township free of fraud, deceit, or other misconduct affecting the exercise of their franchise by the voters.

The minor and sparse violations of directory statutes as alleged in the argument of Petitioners had no reasonable effect upon the outcome of the election. Although this Court is aware as explained aforesaid that perhaps minor infractions of technical provisions of directory statutes may have occurred, it is clear that these technical violations have had no effect upon the legitimate exercise of the will of the people of Nameoki Township.

The only issue that has created any concern to this Court is the six missing ballots. Obviously, as both Petitioners and Respondent have asserted, the lone missing ballot in Precinct Five is likely to be the result of mathematical error. It is also reasonable that the error of five votes could be attributed to an errant call of 'tally' in counting the ballots. However, this Court will assume that six ballots are missing. Clearly, that vote can have no effect upon the election for Township Supervisor, since if all six votes be given to Petitioner, Louis Whitsell, which is contrary to the law of the State, he would still lose the election by two votes. Thereafter, this Court has totally excluded any consideration of those votes as to Petitioner, Louis Whitsell.

The only issue left to be decided is what should be done as to the six ballots as they affect the election for Township Assessor. This Court has the power to grant and fashion equitable relief in the following ways: (1) it can call a new election; (2) it can ignore *in toto* the six ballots; (3) it can ignore the results in Precincts Four and Five *in toto*; or, (4) this Court can *pro rata* the ballots.

First, this Court finds it wholly inappropriate to call a new election. The large expenses of both Petitioners, Respondents, and of election judges would be improper relief. The Court would do a disservice to the 3,300 plus voters exercising their franchise. Additionally, no factual basis exists to believe that any fraud, deceit or mistake affected this election. Finally, those votes would only speculatively affect this election.

Second, this Court finds it is appropriate to ignore the six ballots as to *pro rata* those ballots under these circumstances; however, this Court is impressed by the authorities suggested by Respondents concerning the rationale behind the *pro rata* rule.

Third, the Petitioners have urged that this Court set aside the total vote in the two precincts. This would be the worse exercise of judicial discretion of which this Court has seen. The argument presupposes an equitable result by ignoring the ballots cast by 400-500 registered voters. It should be noted no fraud, deceit, or any other evidence indicates either the tampering of ballots or the reasonable opportunity of anyone to tamper with the ballots.

Finally, this Court is impressed with the authorities and reasoning cited by Respondents, favoring the *pro rata* distribution of ballots under facts similar to those found by this Court. Therefore, pursuant to said citations, this Court awards three votes to each candidate. This Court finds no effect upon the result of the election, but does find a change in the vote of: Macios, 1492; Madison, 1490.

THEREFORE, IT IS ORDERED:

1) That this Court denies the Petition, and judgment is entered upon behalf of Respondents, Harold Davis and Carl Macios upon all requested relief.

2) That the affirmative defenses of Respondents continued by request of Petitioners, are moot."

On appeal from the order, petitioners first contend that in light of the numerous alleged Election Code violations, the lower court erred in refusing to invalidate the results of the election and in apportioning certain ballots *pro rata*. Petitioners alleged that: ballots were left unattended; ballots were handled by pollwatchers; ballots were not properly sealed; ballots were missing; ballots were removed from the ballot box and were initialed after the polls were closed; preinitialed ballots were left unattended; tally sheets were altered; and that voting returns were larger than the number of voters on the voting lists. In arguing their contention before this court, petitioners have presumed that each of the allegations are fully supported by the evidence presented below. However, to the contrary, the lower court expressly found most of the allegations to be unsupported by the evidence, which finding is undisputed, and as to the remaining allegations, the court found such to be at most inconsequential mistakes or omissions. With regard to the allegation of missing ballots, the court found a total of six ballots from two precincts to be potentially missing, which number could have no effect on the election for township supervisor, but could effect that of

township assessor. For this office, the court determined to apportion the ballots *pro rata.*

■■ Petitioners correctly state the Election Code was initially enacted to safeguard the right of suffrage of the people of the State of Illinois and to ensure their effective will. (*Stradford v. Reinecke*, 6 Ill. App. 2d 537, 128 N.E.2d 588.) It is equally clear that the inconsequential mistakes and omissions of election officials in performing mandatory duties of a precautionary nature will not invalidate the results of an election. *Sibley v. Staiger*, 347 Ill. 288, 179 N.E. 877.

The petitioners rely upon *Pinkston v. Holland*, 133 Ill. App. 2d 865, 272 N.E.2d 247; however, the case is distinguishable upon the facts. In *Pinkston*, a variety of Election Code violations were found. Five more ballots were cast in the Village of Bush than actually were applied for by the voters. Also, six of the ballots cast were not initialed by any election judge. Finally, none of the ballots contained the facsimile signature of the clerk. None of these operative facts appear in the instant case.

The petitioners also rely on *Drolet v. Stentz*, 83 Ill. App. 2d 202, 227 N.E.2d 114. The facts of the instant case are totally incongruous with those contained in *Drolet.*

In the instant case, only six ballots were found to be missing. None of the missing ballots were found to be lost because of fraud, deceit or other misconduct. All six ballots may well be the result of mathematical or call errors. Therefore, the instant case is distinguishable from the facts in *Drolet.*

In *Leach v. Johnson*, 20 Ill. App. 3d 713, 313 N.E.2d 636, we establish that in nearly every case it is possible that someone who was not authorized could have access to the ballots. The court explained:

> "Whether or not the voting of nonresidents in a precinct is sufficient to disenfranchise the whole precinct depends upon a number of factors which again must be *determined by the trial judge.*" (Emphasis added.) (20 Ill. App. 3d 713, 717, 313 N.E.2d 636, 640.)

In the instant case, within its sound discretion, the trial court has refused to disenfranchise two entire precincts over the possibility that there are six missing ballots.

The petitioners also rely upon *Gibson v. Kankakee School District 111*, 34 Ill. App. 3d 948, 341 N.E.2d 447 for the proposition that it is the obligation of the court to disenfranchise an entire precinct where the character of the irregularities is so serious or numerous that the number of illegal votes can neither be ascertained nor separated from the legal votes. However, that case reversed the decision of the trial court which disenfranchised an entire precinct where there were clerical irregularities

and a total absence of proof of fraud by election officials and held that such disenfranchisement would be improper. The court stated:

"There is a presumption of validity to the acts of election officials. The total vote of a precinct ought not to be disenfranchised unless the proof of irregularities is so clear, and their character so serious or numerous that the number of legal votes cannot be ascertained and separated from the illegal ones, in which case disenfranchisement of an entire precinct cannot be avoided." 34 Ill. App. 3d 948, 955, 341 N.E.2d 447, 452.

In the instant case, the trial court found but six missing ballots. A *pro rata* apportionment of these ballots is proper when there is a total absence of evidence showing fraud. (*Thornton v. Gardner*, 30 Ill. 2d 234, 195 N.E.2d 723; see also *Crum v. Green*, 68 Ill. App. 2d 246, 215 N.E.2d 817, wherein the court refused to disturb the trial court's finding that the ballots had been properly preserved.) Accordingly, we find no merit to the first contention raised.

The petitioners next urge that the court erred in holding that "the violations" were only directory rather than mandatory. The violations referred to are not specified. On this issue, petitioners have presented no argument and have cited no authority nor any fact in the record. We are therefore left with nothing to consider on this point and deem it waived.

It is contended next by the petitioners that the trial court erred in holding that affirmative proof of fraud, deceit, or other misconduct is necessary to support a petition contesting election. The petitioners contend that they are not required to rebut any presumption of "inadvertent noncompliance" or "honest mistake," but rather are only required to sustain burden of proving violation of mandatory Election Code provisions and opportunity for access, rather than actual tampering. To this end, the petitioners assert that section 17—16 of the Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 17—16) has been violated by the preinitialing of ballots by election judges.

It is clear that election judges must initial ballots in order for those ballots to be counted and that the failure of the judges to initial ballots to be cast is a violation of a mandatory section of the Election Code. An uninitialed ballot cannot be counted. (*Morandi v. Heiman*, 23 Ill. 2d 365, 178 N.E.2d 314; *Harvey v. Sullivan*, 406 Ill. 472, 94 N.E.2d 424; *Tuthill v. Rendleman*, 387 Ill. 321, 56 N.E.2d 375.) However, we do not find, nor do petitioners cite, any case law which supports their contention that this statute prohibits the practice of preinitialing ballots by election judges; it omits any mention of preinitialing of ballots. The petitioners cite *Anderson v. Schneider*, 67 Ill. 2d 165, 365 N.E.2d 900, as authority for this assertion. We concur with the rule in the cited case but do not find it dispositive. Indeed, as stated:

"* * * conduct of elections must be exercised in a manner consistent with the equal protection and due process clauses of the fourteenth amendment and with the interrelated right to associate for political purposes which is guaranteed by the first amendment." (67 Ill. 2d 165, 171, 365 N.E.2d 900, 902.)

The testimony was that the action of preinitialing of ballots was done by local custom to facilitate franchise. We, while not condoning such practices, do not, under the facts of this case as determined from the record, find such conduct to require reversal.

■■ The petitioners contended in the trial court that one election judge in Precinct Eleven initialed ballots after the polls were closed and the ballot box was opened. That election judge denied that such actions occurred. The only witness to so testify was a pollwatcher for the petitioners. That witness was not found to be credible by the trial court. The court's finding was not contrary to the manifest weight of the evidence nor have the petitioners so asserted.

The petitioners assert that the ballots in Precincts Six, Eight and Eleven were not tied or taped securely. The only witness to so testify also indicated that the election judges had also failed to sign the ballots. The witness was petitioner, Louis Whitsell, who also testified that in Precinct Nine the ballots were not tied or taped securely. The trial court is the best judge of this witness's credibility. No missing or added votes were shown to exist in these three questioned precincts. Also, the trial court found that no unauthorized person had access to the ballots. Finally, the trial court found that the ballots were properly secured.

The petitioners rely on *MacWherter v. Turner*, 52 Ill. App. 2d 270, 201 N.E.2d 325, for the proposition that there must be substantial compliance with the provisions of the Election Code concerning the typing, sealing, and wrapping of ballots. The issue is whether or not any showing has been made that unauthorized persons had an opportunity to tamper with the ballots. (*MacWherter v. Turner*, 52 Ill. App. 2d 270, 201 N.E.2d 321; *Crum v. Green*, 68 Ill. App. 2d 246, 215 N.E.2d 817; *Bethard v. Mink*, 10 Ill. App. 3d 525, 294 N.E.2d 702.) The petitioners have failed to show any substantial noncompliance by competent evidence to the court below.

The fifth issue raised by the petitioners is whether the trial court erred in finding that Election Judge Teetor had no conflict of interest and that her selection was not violative of the Illinois Corrupt Practices Act.

The petitioners assert that one election judge in one precinct violated section 3 of the Corrupt Practices Act (Ill. Rev. Stat. 1975, ch. 102, par. 3) by serving as an election judge though appointed by a political body on which one of the petitioners served. The petitioners then contend the act is a violation of section 13—4(6) of the Election Code (Ill. Rev. Stat. 1975,

ch. 46, par. 13—4(6)), which prohibits candidates for office and precinct committeemen from being election judges. Thus, the petitioners would have this court hold that the purpose of the statute is to eliminate all possible conflict of interest. The court below found no conflict of interest. With this finding, we do not disagree.

■■ As their final point, the petitioners contend the trial court erred in finding that the violations of the Election Code had no reasonable effect upon the outcome of the election, especially considering the nearly equal division of the apparent votes cast. There is no basis in the record to support such a conclusion..

For the reasons previously stated, we find no abuse of discretion in the trial court.

The judgment is affirmed.

G. J. MORAN, P. J., and KUNCE, J., concur.