PATRICIA A. MENSSEN *et al.*, Petitioners-Appellants, *v.* EUREKA UNIT
DISTRICT #140, Respondent-Appellee.

Fourth District   No. 15199

Opinion filed April 6, 1979.

10

Moehle, Reardon, Smith & Day, Ltd., of East Peoria (G. Edward Orr, of counsel), for appellants.

Leiken, Leiken & Leiken, of Eureka, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:
School tax increase election.
Passed by 47 votes.
Circuit court upheld the election.
We affirm.

Petitioners contested the validity of an election on a proposal for an increase in the educational fund tax rate in Eureka Unit District #140 which passed 1,047 to 1,000. They cited numerous errors, omissions and failures by the school board to comply with state election laws in support of their contention that the election must be overturned. Although the trial court recognized that the evidence clearly indicated that many statutory guidelines were not followed, it upheld the election.

■■ Since every error does not warrant the invalidation of an election, it must be determined on appeal whether the statutory provisions that were violated are mandatory or directory. The reason for the distinction is to obtain fair elections without invalidating the will of the people, for although legal safeguards must be faithfully observed, literal compliance with formal steps should not be required if the spirit and intent of the law is not violated. (*Zbinden v. Bond County Community Unit School District No. 2* (1954), 2 Ill. 2d 232, 117 N.E.2d 765; *Stroud v. McCallen* (1944), 386 Ill. 103, 53 N.E.2d 422.) The mandatory-directory distinction depends upon the legislative intent which is ascertained from the nature and object of the act and the consequences which would result from construing it one way or another. *Zbinden.*

■■ Petitioners first claim that the school board failed to establish by resolution the precinct boundaries and failed to delineate the boundaries in the notice of election as required by sections 9—7 and 9—11 of the School Code (Ill. Rev. Stat. 1977, ch. 122, pars. 9—7, 9—11). The courts have consistently held that giving notice of a school board election is a mandatory, jurisdictional prerequisite because voters must have notice of the time and place of an election. *Roberts v. Eyman* (1922), 304 Ill. 413, 136 N.E. 736; *People v. Community Unit School District No. 201* (1955), 7 Ill. App. 2d 32, 129 N.E.2d 28.

In this case there was no evidence that the school board purposefully omitted the precinct boundaries or that the failure produced fraud or

confusion. The school board resolution did establish the voting precincts and polling places, and precinct boundary maps (which had not been changed for at least four years) were displayed at the election table. Furthermore, in the election immediately preceding the one in question, the precinct boundaries were delineated in the notice. Thus, the voters had notice of the time and place of the election and a person attempting to vote in the wrong precinct could easily have been directed to the proper location. In light of these facts, we find the requirement concerning delineation of the precinct boundaries in the notice to be directory.

Petitioners next contend there was no competent legal evidence concerning the publication of legal notice of the election. A written or printed copy of the notice of election as published together with the certificate of publication constitutes sufficient evidence of publication. (Ill. Rev. Stat. 1977, ch. 100, par. 1.) However, such evidence must appear in the school board records because the official record is the only lawful evidence of notice and cannot be contradicted, aided or supplemented by parol evidence. *Roberts; Community.*

When the case first came to trial, the records of the school board contained an actual page of the November 24, 1977, Woodford County Journal which included the legal notice of election, but no publisher's certificate was attached. Later, the same legal notice with the publisher's certificate attached was admitted into evidence. However, subsequently the court found that it had erred in admitting the notice and certificate into evidence, struck it from the record, and gave leave to the parties to reopen as a result of that order. The school board then presented evidence that the notice and the certificate were part of the official record. However, petitioners argued that the court abused its discretion in allowing the case to be reopened and that the meeting at which the proof of notice of the election was incorporated was invalid.

A school board has the right to amend its records to conform to the real facts. (*People ex rel. Mark v. Hartquist* (1924), 315 Ill. 228, 146 N.E. 140; *Phenicie v. Board of Education* (1927), 326 Ill. 73, 157 N.E. 34.) Here, the amended record contained evidence of the publication of the notice of election, and we do not believe the trial court abused its discretion in allowing the evidence to reflect what actually happened, particularly since there was no indication that the petitioners were prejudiced by the court's action. Contrary to the petitioners' other contention, the school board meeting by which the record was amended was valid because written notice of the date, time and place of the adjourned meeting was sent to the board members and the Woodford County Journal, and the Open Meetings Act (Ill. Rev. Stat. 1977, ch. 102, pars. 41-46) does not require that the notice also include an agenda. Ill. Rev. Stat. 1977, ch. 102,

par. 42.02; *Allen v. County of Cook* (1976), 65 Ill. 2d 281, 357 N.E.2d 458.

Petitioners also allege the failure to obtain and preserve ballot receipts requires disenfranchisement of the results of precinct numbers 1 and 3. There were unexecuted receipts for the number of ballots given to the precincts but there were no receipts in evidence signed by an election judge nor a series of receipts tracing custody. Although there was no record concerning the number of cast, uncast, and spoiled ballots, an election judge testified that the total number of these ballots equaled the number of ballots they were given. Furthermore, she stated that the number of votes cast corresponded with the number of persons who signed affidavits and whose names were entered in the poll book.

The failure to obtain and preserve ballot receipts clearly violated the statute. (Ill. Rev. Stat. 1977, ch. 122, par. 9—8.) However, there was no evidence that any ballots were lost or stolen or that the ballot boxes were stuffed with additional ballots or exposed to unauthorized individuals. In the absence of any indication of any wilful misconduct, fraud, or actual harm, we find the statutory provisions violated were directory.

Finally, petitioners claim that even if every statutory provision violated is directory, the sheer number of violations indicates that the election was conducted in a manner open to fraud thereby mandating its invalidation. Several procedures utilized or neglected by the school board election officials both prior to the election and on the day of the election itself violated statutory guidelines. However, courts are reluctant to disenfranchise an entire precinct and will do so only when it is clearly necessary to protect the integrity of an election. *Gibson v. Kankakee School District 111* (1975), 34 Ill. App. 3d 948, 341 N.E.2d 447; *Leach v. Johnson* (1974), 20 Ill. App. 3d 713, 313 N.E.2d 636.

■■ Although there were some errors concerning the absentee ballots, Judge Caisley properly considered the disputed names to be those of registered voters and correctly deducted from the results—on a pro rata basis—the unregistered voters. This was proper since there was no suggestion of fraud or undue influence and the number of unregistered voters was small in comparison to the number of registered voters. *Gibson*; *Leach*; *Webb v. Benton Consolidated High School District No. 103* (1970), 130 Ill. App. 2d 824, 264 N.E.2d 415.

The failure by the election judges to administer oral oaths to the voters and each other also does not invalidate the election. In *Carr v. Board of Education* (1958), 14 Ill. 2d 40, 150 N.E.2d 583, the court held that the failure of voters to execute affidavits did not invalidate the election since the statutory omission neither perpetrated a fraud at the election nor hindered the rights of any person to challenge the qualifications of any voter or contest the election. The procedure used in this case also did not perpetrate a fraud. The fact that the school

superintendent appointed the election judges without a resolution authorizing him to act as the school board's agent apparently did. not affect the outcome of the election as the judges appointed were experienced and free of any fraudulent intent.

■■ Petitioners point out that the ballot boxes were not publicly opened and exhibited to the first voters and that the voters did not personally deposit their ballots into the ballot box. However, the election judges inspected the ballot boxes prior to their use and placed the ballots into the boxes. In the absence of evidence of their intentional misconduct, the election should be upheld.

Petitioners also claim the public was excluded when the polls closed at 7 p.m. However, there is no evidence that the poll watchers were systematically excluded at that time, only that none were present. The school board cannot be penalized for the public's decision not to watch the counting of absentee ballots.

Although there were a number of statutory violations in this election, the school board's action can be characterized as inadvertent noncompliance with the legislative requirements. There is no evidence whatever that the school board or election officials either through fraud or misconduct attempted to influence the results of the election. Although the school board's conduct cannot be condoned, we believe the integrity of the election is not in doubt and that the will of the people should not be thwarted by technical violations.

Affirmed.

TRAPP and GREEN, JJ., concur.