NORRIS SNOW, Plaintiff-Appellant, v. ARNOLD NATZKE, Livingston County Clerk, Defendant, (The Canvassing Board of Newton Township, Livingston County, *et al.*, Defendants-Appellees).

Fourth District   No. 4—85—0508

Opinion filed January 28, 1986.—Rehearing denied February 26, 1986.

Thompson, Strong, Blackeman & Schrock, Ltd., of Pontiac (C. Thomas Blakeman, of counsel), for appellant.

Fellheimer, Fellheimer, O'Dell & Travers, Ltd., of Pontiac (Robert M. Travers, of counsel), for appellee Dave Ramsey.

JUSTICE GREEN delivered the opinion of the court:

On April 30, 1985, plaintiff, Norris Snow, filed a petition in the circuit court of Livingston County contesting the outcome of an election, alleging errors and irregularities in the conduct of the election and the tallying of ballots. The trial court confirmed the election results and denied plaintiff's request for a court-supervised recount or, in the alternative, a new election. Plaintiff appeals, contending that 38 ballots that were uninitialed by election judges should not have been included in the tabulation of ballots and that no evidence that the uninitialed ballots were cast by absentee voters should have been admitted at trial.

Plaintiff and defendant, Dave Ramsey, ran as opponents for the office of highway commissioner of Newtown Township in the general election held on April 2, 1985. Each candidate received 190 votes, and, pursuant to statute, a lottery was held by the canvassing board to determine the winner of the election. The lottery was won by defendant Ramsey, who was certified by the board as the winner of the election. A discovery recount was held on April 18, 1985, where it was discovered that 38 of the ballots cast and counted as valid ballots were not initialed by an election judge. On April 30, 1985, plaintiff filed a petition alleging that an unregistered voter had been allowed to vote in the election, that the polls had closed before 7 p.m. and that counting the 38 uninitialed ballots contravened a mandatory statutory requirement that all ballots, including absentee ballots, be initialed by an election judge.

At trial, Arnold Natzke, the county clerk, testified that absentee voters send their ballots to his office, which then forwards the sealed absentee ballots and the original applications for the absentee ballots in a second envelope to the election judges who cast the absentee ballots after the polls close. Evidence admitted at trial included 38 sets

of absentee envelopes, and two absentee ballots which were found in an envelope for defective ballots and were not voted.

Three of the election judges also testified at trial. Linda Simpson testified that she thought the absentee ballots were not initialed due to error, although she herself was not responsible for initialling ballots. Betty Hardin testified that it was her duty to initial ballots but that she did not initial any absentee ballots nor, to the best of her knowledge, did anyone else. She also testified that she did not know whether any uninitialed absentee ballots were put in the ballot box. Verna Osterdock testified that she believed the 38 uninitialed ballots were absentee ballots because of the mathematical coincidence that there were 38 absentee ballots cast and 38 uninitialed ballots.

Sections 17—9 and 17—16 of the Election Code (Ill. Rev. Stat. 1983, ch. 46, pars. 17—9, 17—16) provide that each ballot must be initialed by an election judge, and section 19—9 of the Election Code extends this requirement to the casting of absentee ballots:

"At the close of the regular balloting and at the close of the polls the judges of election of each voting precinct shall proceed to cast the absent voter's ballot separately, *** and having endorsed the ballot in like manner as other ballots are required to be endorsed, shall deposit the same in the proper ballot box or boxes and enter the absent voter's name in the poll book the same as if he had been present and voted in person." Ill. Rev. Stat. 1983, ch. 46, par. 19—9.

Illinois courts have consistently held that the statutory provision requiring election judges to initial each ballot before it is cast is a mandatory provision and that, unless a ballot is initialed, it must be thrown out, even if it is an absentee ballot. (*Morandi v. Heiman* (1961), 23 Ill. 2d 365, 178 N.E.2d 314; *Crum v. Green* (1966), 68 Ill. App. 2d 246, 215 N.E.2d 817.) However, in *Craig v. Peterson* (1968), 39 Ill. 2d 191, 233 N.E.2d 345, the supreme court recognized that the statutory initialling requirement must be interpreted and applied in light of constitutional rights of voters and there held the initialling requirement directory. The court acknowledged that the application of the statutory initialling requirement is mandatory in the usual case where it is a necessary and reliable method of separating legally cast ballots from those which would be likely to be illegally cast, in order to guarantee the integrity of the election. However, *Craig* involved an election where voting machines were used at the polling place and paper ballots were used by absentee voters. The absentee ballots could be distinguished from the other ballots because they were qualitatively different, and application of the initialling requirement would

not contribute to the integrity of the election. The court stated its limited precedent in these words:

> "We therefore hold the statutory requirements relating to the initialling of ballots by election judges are directory, rather than mandatory, when considered in relation to an election where the only paper ballots used on the issue or office in question are those of absentee voters, and the only irregularity complained of is the absence of such endorsement." (39 Ill. 2d 191, 201-02, 233 N.E.2d 345, 351.)

We conclude that *Craig* did not intend that uninitialed ballots be allowed any time it could be shown by a preponderance of the evidence that such ballots were those sent to absentee voters. Rather, near certainty was required.

The *Craig* court indicated that its decision was consistent with *Morandi*. It noted that in *Morandi*, the majority of uninitialed ballots were cast by absentee voters but it was "undisputed" that some of the uninitialed ballots were cast by those who were voting in person. The court further noted that although it was argued that absentee ballots had been folded differently from those cast in person, the *Morandi* court stated that it would not base its decision on such a "fortuitous circumstance." *Craig v. Peterson* (1968), 39 Ill. 2d 191, 198, 233 N.E.2d 345, 349.

In *Craig*, the court could find with near certainty that the uninitialed ballots were valid absentee ballots. However, in the cause now before this court, the evidence produced lacks the near certainty of *Craig* and does not justify finding the uninitialed ballots valid.

■■ Nor do we find our decision today inconsistent with that of the Fifth District in *Goble v. Board of Education* (1980), 83 Ill. App. 3d 284, 404 N.E.2d 343. Although *Goble* involved an all-paper ballot election, nine uninitialed absentee ballots were counted because they could be "positively identified as having been validly cast, and there [was] no suggestion of fraud or voting by unqualified persons." (83 Ill. App. 3d 284, 286, 404 N.E.2d 343, 345.) Since the uninitialed ballots could be positively identified as absentee ballots, the *Goble* court found that it would not have contributed to the integrity of the election to invalidate them. Here, however, the testimony that the uninitialed ballots were probably absentee ballots is not sufficient for us to bypass the statutory requirement. The question is close, yet we hold that the *Craig* exception requires almost absolute certainty that the uninitialed ballots were validly cast. We do not have that degree of certainty here.

Because we determine that the evidence failed to show with cer-

tainty that the uninitialed ballots were absentee ballots, we need not decide whether the court erred in admitting that evidence.

Therefore, we reverse the order of the trial court and remand this cause to that court with directions that it conduct a recount, excluding from the tally those ballots which do not bear the signature or initials of an election judge.

Reversed and remanded with directions.

McCULLOUGH, P.J., and SPITZ, J., concur.