PAUL BAZYDLO, Petitioner-Appellee, v. HARRY VOLANT *et al.*, Respondents (Harry Volant, Respondent-Appellant).

Third District   No. 3—94—0027

Opinion filed June 28, 1994.

J. Paul Aplington, of Aplington, Kaufman, McClintock, Steele & Barry, of La Salle (Thomas L. McClintock, of counsel), for appellant.

Mathias W. Delort and Denise K. Filan, both of Evergreen Park (Odelson & Sterk, Ltd., of counsel), for appellee.

JUSTICE LYTTON delivered the opinion of the court:

The issues presented in this election contest are whether the evidence supports an inference that 28 uninitialed election ballots had been cast by absentee voters, and, if so, whether those ballots should have been counted in the electoral results. The trial court excluded the uninitialed ballots from the election count, and as a result,

petitioner Paul Bazydlo (Bazydlo) was declared the winner of the election over respondent Harry Volant (Volant). We conclude that the only possible inference to be drawn from the evidence is that the uninitialed ballots represented absentee votes and should have been included in the election count. Thus, we reverse the judgment of the trial court.

The Village of Ladd held a general election for village president on April 20, 1993. After the completion of the official vote canvass, Volant was declared the winner by a margin of one vote. The official count was 344 to 343. During a discovery recount, a total of 28 ballots were found to be uninitialed. Of these ballots, the parties agreed that 25 were cast for Volant and 3 for Bazydlo. Several other ballots were also disputed but are not at issue here. Bazydlo filed a petition contesting the election, and the trial court conducted a full recount.

Each of the election judges testified that all of the in-precinct ballots were initialed, counted, and verified prior to the opening of the envelope containing the absentee ballots; the in-precinct ballots matched the number of in-precinct voters that day. The envelope containing 52 absentee ballots was then opened, and these ballots were separately stacked and counted. The number of absentee ballot applications was compared with the number of returned absentee ballots, and only one absentee ballot had not been returned. At the hearing, three election judges testified that they had helped stack the absentee ballots; each testified that more than one pile had been created, explaining that it was not possible to place 52 ballots in one stack.

After counting the absentee ballots, election judge Peterson was to initial them and their attached ballot stubs. Peterson stated that she had two stacks of absentee ballots in front of her but could clearly recall initialing only one stack. She and the other judges were uncertain how many ballots had been placed in each pile because they had divided them, without counting, to facilitate their work. Peterson said that the only explanation for the 28 uninitialed ballots was that one stack of absentee ballots had not been initialed, although no judge saw any uninitialed ballots on the night of the election. After the absentee ballots had been counted and the stubs removed and separately stacked, they were combined with the in-precinct ballots and taken to the central tabulation station, where the ballots were processed.

The trial judge agreed with Volant that during the discovery recount, 27 uninitialed ballots were found in a single group. At the evidentiary hearing, detached ballot stubs corresponding to the 28 uninitialed ballots also formed a cluster in the pile of stubs.

The twenty-eighth uninitialed ballot had been rejected by the ballot counting machine as incapable of being machine-processed due to some damage to the ballot. Upon visual inspection, this ballot was a vote for Volant and was unable to be counted with the other 27 ballots due to a physical anomaly not affecting its validity. This ballot was called spoiled ballot 4 at trial to differentiate it from the 27 uninitialed ballots that had been processed by machine. Undamaged substitute ballots duplicating each spoiled ballot had been prepared and counted on the night of the election.

After hearing the testimony of the election judges and inspecting the ballots, the trial judge found that none of the 28 uninitialed ballots could be readily identified as absentee ballots without speculation or conjecture. Although he conceded that no allegations or evidence of voting fraud or irregularities were present in the case, he excluded the 28 uninitialed ballots from the election count, leaving the vote count at 341 votes for Bazydlo and 320 votes for Volant. The trial court declared Bazydlo the new President of the Village of Ladd. Volant appealed.

Under section 24A—10(1)(b) of the Election Code (10 ILCS 5/24A—10(1)(b) (West 1992)), ballots that have not been initialed by an election judge must be marked "Defective" and excluded from the canvass. However, our supreme court has carved out an exception to the initialing requirement that allows absentee votes meeting certain criteria to be included in the count. (*Pullen v. Mulligan* (1990), 138 Ill. 2d 21, 52, 561 N.E.2d 585, 598; *Craig v. Peterson* (1968), 39 Ill. 2d 191, 233 N.E.2d 345.) Under this exception, uninitialed absentee ballots may be counted only if two conditions are met: (1) they are readily identifiable and distinguishable from in-precinct ballots, and (2) the initialing requirement does not enhance the integrity of the election. *Pullen*, 138 Ill. 2d at 52, 561 N.E.2d at 598.

In *Craig*, paper ballots had been used only by absentee voters, while in-precinct ballots had been cast by machine. Thus, the court could readily distinguish in-precinct ballots from absentee ballots. In *Pullen*, the supreme court applied the *Craig* exception where absentee and in-precinct ballots were physically distinguishable because the absentee ballots had handwritten precinct numbers and the in-precinct ballots had preprinted precinct numbers. In both cases, the court determined that, absent allegations or evidence of fraud or other irregularities, the initialing requirement as applied to absentee ballots did not substantially contribute to the integrity of the election process.

Volant contends that the *Craig* exception should be applied to physically identical absentee and in-precinct ballots when other evi-

dence proves the distinctiveness of the absentee ballots. He argues that an inference created by the evidence was sufficient to readily identify the uninitialed ballots as absentee ballots and distinguish them from in-precinct ballots. He also contends that the initialing requirement is directory because initials on these absentee ballots would not contribute to the integrity of the election.

Bazydlo argues that *Craig* and *Pullen* are inapplicable because the in-precinct and absentee ballots in those cases were physically distinguishable. Instead, he claims that when absentee and in-precinct ballots are facially indistinguishable, the *Craig* exception should not be permitted, citing *McDunn v. Williams* (1993), 156 Ill. 2d 288, 620 N.E.2d 385, and *Morandi v. Heiman* (1961), 23 Ill. 2d 365, 178 N.E.2d 314.

Bazydlo also asserts that the testimony of the election judges was "confused, self-serving and inconsistent with the physical evidence." Thus, the uninitialed ballots were not identified as absentee with sufficient certainty, and the trial court's decision is not contrary to the manifest weight of the evidence. Finally, Bazydlo advances certain constitutional claims.

Prior to resolving the main issue, we must first determine the correct burden of proof that a party must meet at trial. In *Snow v. Natzke* (1986), 140 Ill. App. 3d 367, 488 N.E.2d 1077, the fourth district required more than a preponderance of the evidence to show that uninitialed ballots had been cast by absentee voters and applied a "near certainty" or "almost absolute certainty" standard. *Snow*, 140 Ill. App. 3d at 370, 488 N.E.2d at 1078-79.

■ We believe that the proper burden of proof is clear and convincing. The clear and convincing standard is met when the evidence is "more than a preponderance while not quite approaching the degree of proof necessary to convict a person of a criminal offense." (*In re Marriage of Nolte* (1993), 241 Ill. App. 3d 320, 326, 609 N.E.2d 381, 385; *In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 786, 450 N.E.2d 1385, 1389.) We believe that a near certainty standard is unwarranted; a clear and convincing standard adequately balances the conflicting interests in preserving the integrity of the election and avoiding unnecessary disenfranchisement of qualified absentee voters.

To determine whether the first prong of *Craig* has been met, we must analyze whether the absentee ballots can be readily identified and distinguished from in-precinct ballots. The decision in *Goble v. Board of Education of Iuka Community Consolidated School District No. 7* (1980), 83 Ill. App. 3d 284, 404 N.E.2d 343, is instructive. There, the court found that, where no fraud or irregularity had been

suggested, uninitialed absentee ballots could be positively identified without requiring that in-precinct and absentee ballots be facially distinguishable. Because the election judge in charge of initialing the absentee ballots testified that she had not initialed them, the court could infer that physically identical ballots had been cast by absentee voters. Based upon this inference, the court found that the *Craig* test had been satisfied and included the uninitialed ballots in the count.

In this case, the trial court found no allegations or evidence of fraud or other voting irregularities. All the in-precinct ballots were initialed, counted, and verified before the envelope containing the absentee ballots was opened. Each election judge specifically recalled that the number of in-precinct ballots exactly matched the number of in-precinct voters and that each in-precinct ballot had been initialed. Election judge Peterson, who had the duty of initialing the absentee ballots, testified that she remembered initialing only one of the two stacks of ballots.

Moreover, during the discovery recount, 27 uninitialed ballots were clustered in a single group. The twenty-eighth uninitialed ballot, spoiled ballot 4, was only superficially different from the other 27 uninitialed ballots, causing it to be physically separated from the undamaged ballots. This ballot was an undisputed vote for Volant, and its undamaged substitute ballot had been counted in the original canvass. The 28 detached ballot stubs associated with the 28 uninitialed ballots were also grouped together, further buttressing the inference that the ballots had been cast by absentee voters and remained uninitialed due to the error of the election judge.

All absentee ballots are accounted for when the 28 uninitialed ballots are considered. In addition, the total number of votes cast exactly matches the number of voter applications filed when these 28 ballots are added to the initialed absentee ballots and the verified in-precinct ballots.

The trial court mischaracterized this evidence as a "fortuitous circumstance" and applied *McDunn* and *Morandi* to evaluate the testimony of the election judges. *McDunn* and *Morandi* are inapposite to the present case. In *McDunn*, the absentee and in-precinct ballots were facially indistinguishable, but the initialed and uninitialed ballots had been combined *prior* to counting, unlike the present case. The supreme court refused to apply the *Craig* exception in *McDunn* because of the impossibility of distinguishing between absentee and in-precinct ballots. In *Morandi*, the only distinguishing factor between absentee and in-precinct ballots was that absentee ballots may have been folded differently to fit into envelopes.

■ Here, the trial court's finding that the physical evidence was

merely a fortuitous circumstance was erroneous. When the evidence is viewed in its entirety, the only possible inference is that the uninitialed ballots, although facially indistinguishable, are readily identifiable as absentee votes. Thus, the first prong of the *Craig* exception has been satisfied.

The second prong of *Craig* requires that the initialing requirement not add to the integrity of the election. In the case of in-precinct voters, the initialing requirement is mandatory because it affords the only means of detecting fraudulent practices, such as stuffing the ballot box and culling illegal ballots from legal ones. *Pullen*, 138 Ill. 2d at 53, 561 N.E.2d at 599.

The requirement is merely directory in the case of absentee ballots because they are not cast at the polls and are opened only after the polls have closed, so initialing does not aid in preventing vote fraud. (*Pullen*, 138 Ill. 2d at 53, 561 N.E.2d at 229. See also *Craig*, 39 Ill. 2d at 200-01, 233 N.E.2d at 350-51.) Unlike in-precinct voters, absentee voters cannot verify that an election judge has initialed their ballots. Thus, qualified absentee voters would be disenfranchised if their uninitialed ballots were invalidated after they "[had] done everything in their power to comply with the law, a result which neither our State nor Federal constitutions [*sic*] will tolerate" when the rule does not substantially contribute to the election's integrity. (*Craig*, 39 Ill. 2d at 199, 233 N.E.2d at 349-50.) " 'The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government.' " *Craig*, 39 Ill. 2d at 195, quoting *Reynolds v. Sims* (1964), 377 U.S. 533, 555, 12 L. Ed. 2d 506, 523, 84 S. Ct. 1362, 1378.

In this case, as in *Craig* and *Pullen*, neither party questioned the legitimacy of the uninitialled absentee ballots or alleged any fraud or other irregularity. (*Pullen*, 138 Ill. 2d at 53, 561 N.E.2d at 599.) If the exception is not applied here, nearly 10% of the qualified voters in the Ladd election will be disenfranchised without any offsetting contribution to the integrity of the election. Allowing qualified absentee voters to be disenfranchised under the facts of this case would damage rather than enhance the integrity of the election process. " 'Elections are equal when the vote of each voter is equal in its influence upon the result to the vote of every other elector—where each ballot is as effective as every other ballot.' " (*Craig*, 39 Ill. 2d at 195, quoting *Moran v. Bowley* (1932), 347 Ill. 148, 162-63.) The second prong of the *Craig* exception has been met.

■ We hold that Volant has established by clear and convincing evidence an unchallenged inference that the uninitialed ballots were

cast by absentee voters and that the initialing requirement does not contribute to the integrity of the election. The *Craig* exception to the statutory initialing requirement applies, and the 28 uninitialed ballots are included in the official vote count. The final vote is 344 votes for Volant and 343 votes for Bazydlo.

Because we have reversed the trial court's judgment on statutory grounds, we need not address the parties' constitutional arguments.

For the reasons stated, the judgment of the circuit court of Bureau County is reversed.

Reversed.

McCUSKEY and STOUDER, JJ., concur.