NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231501-U

NO. 4-23-1501

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 12, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| PRECIOUS N. SIMS, | ) | No. 20CF1052 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Peter W. Church, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Harris and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not abuse its discretion in denying defendant pretrial release.

¶ 2    Defendant, Precious N. Sims, appeals the trial court's order denying her pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), hereinafter as amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act. We affirm.

¶ 3                              I. BACKGROUND

¶ 4    On December 21, 2020, the State charged defendant, born on October 21, 1999, with first-degree murder (720 ILCS 5/9-1(a)(2) (West 2020)) and possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2020)). According to the State, defendant stabbed Rodney Griffin during a robbery and was found in unlawful possession of his vehicle.

¶ 5    One day after defendant filed a motion for pretrial release, the State, on December

8, 2023, filed a verified petition to deny defendant that release. The State urged the trial court to detain defendant based on the dangerousness and willful-flight standards. The court found the State failed to prove sufficiently its willful-flight claim, so we will not address it further here. The State listed the following charges that were pending against defendant at the time of the charged offenses: "19 CM 11126-Criminal Damage to Property[;] 20 CM 603-Criminal Damage to Property and Criminal Trespass to Land[; and] 20 CM 604-Criminal Damage to Property and Criminal Trespass to Land." According to the State, the criminal-trespass charges are based on defendant's returning to a residence after having been told by the police she had trespassed. In addition, the "20 CM 604" case, although a misdemeanor, includes the allegation defendant set a chair on fire and tried to set the house on fire. The State reported defendant twice failed to appear in court. The State further provided the following factual basis in support of its petition:

"On 12/18/20, East Moline Police and Fire responded to 880 Avenue of the Cities, East Moline to conduct a welfare check on victim Rodney Griffin. Griffin's employer had gone to Griffin's residence when he had not shown up for work and was able to see him lying on the floor and injured. Officers found Griffin to have suffered multiple stab wounds and he was pronounced dead. Griffin's vehicle, a Chevy Trax *** was found to be missing. The vehicle was later located in Davenport Iowa occupied by the defendant and co-defendant. Upon being taken into custody, the defendant was interviewed. Post-[*Miranda* (see *Miranda v. Arizona*, 384 U.S. 436 (1966))], she admitted going to Griffin's home on 12/17/20 with the co-defendant to rob Griffin. According

to the defendant both she and the co-defendant participated in stabbing Griffin until he died."

¶ 6     A hearing was held on the issue of defendant's pretrial detention on December 13, 2023. The State's proffer mirrored the information in its petition. No additional evidence was proffered.

¶ 7     In support of defendant's position, defense counsel provided a proffer. Counsel stated Steven Sims, defendant's father, was employed as a truck driver and his wife worked locally. They were willing to take defendant into their home and provide for her and to ensure defendant took her medication and attended medical appointments. Steven also had an extensive security system in his home, which would alert him if defendant attempted to leave. According to counsel, Chantelle Leachman, who worked for the jail, and Robert Young would testify regarding defendant's mental-health history since the date she was taken into custody in 2020. This mental-health history included the finding of unfitness to stand trial, defendant's treatment in the Illinois Department of Human Services (DHS), and her behavior after her return from DHS. Their testimony, counsel proffered, would establish defendant had been taking her prescribed medications and her behavior significantly improved. Counsel argued the case had been pending for "roughly three years" with hundreds of pages of discovery and the State summed up its case in just one paragraph. Defense counsel further emphasized the following from the discovery in the case:

> "I would suggest to the Court that [defendant] is a victim of sex trafficking. Her codefendant is a sex trafficker and the victim is—would have been an alleged john. I don't think the State would dispute that information because that is information that we

- 3 -

learned through discovery.

I would also note that my client, [defendant], had cooperated with the police upon her arrest and a lot of the information they used to investigate the matter came from her, and that she is currently also cooperating and has given additional statements upon her return from DHS that would help in the prosecution of the codefendant.

My client was a 19-year-old at the date of this offense. Her codefendant is roughly 60 years old and has a very lengthy—and been to prison multiple times. He has a lengthy criminal history, et cetera.

I would also ask the Court to take judicial notice of certain affirmative defenses that we had filed in this case regarding her defenses that relate to coercion, et cetera. And these also relate to her being—her status, as I would call it, as a victim of sex trafficking.

I would note in deference of that, her codefendant had essentially got her addicted to crack cocaine so that he could manipulate her. She had made allegations of sexual assault, abuse, aggravated battery that he committed against her all in the—in the time frame leading up to this event. So our affirmative defense related to coercion, intoxication, et cetera, are all relevant towards that particular argument.

*** 

"*** [D]efendant herself told the police that she did certain things on the order of her codefendant. Her codefendant is in custody. He's not going to get out of custody and he will no longer be able to have any say or control over her in any manner whatsoever. As long as she's properly medicated and receiving counseling services, I do not believe she is a present threat to anybody including herself."

¶ 8 The trial court found the State had proved by clear and convincing evidence defendant should be detained under the dangerousness standard. The court found defendant had been charged with a detainable offense and the presumption was great or the proof evident defendant committed the offense. Regarding whether defendant was a threat and whether any conditions could mitigate the threat, the court held as follows:

"The Court would turn first to the State's argument regarding her threat to the community. There's a lot of moving parts in all these cases. There's certainly a lot of moving parts in this case. I understand the argument regarding her mental health, regarding her possibly being a participant in this under some form of coercion. That doesn't obviate the fact that she, in fact, did admit to law enforcement upon her arrest *** she, in fact, participated in the stabbing of the victim in this case ***.

The Court also is aware of the lengthy mental health history here in terms of her prior court appearances. The Court, in fact,

- 5 -

has, in this particular case, had [defendant] in this Court's courtroom on multiple occasions. The Court would note that at this juncture, while in the custody of the [jail] and previously in the custody of [DHS], her mental health has improved to the Court's observation greatly, but that's not just the Court's observation. We have reports from DHS that also confirm that she had been restored to fitness. She made great progress with her mental health, and currently she is in a secure environment where she is being offered all necessary and appropriate medication and, in fact, she is taking the medication. While medicated in our custody, she's doing quite well.

That said, this is somebody who at one point in the past, whether she is a victim of sex traffic[king] or not, whether she was placed in a position where she felt some level of coercion or not, nevertheless, as the Court has found factually—and has alleged to have stabbed the victim—I don't have any degree of confidence that—absent the current situation, that this is the least restrictive environment for her in which show can receive these mental health medications. That would then, basically, be a finding by the Court that there are no conditions of release that could assure the Court that she wouldn't find herself in a similar situation and act out in a similar fashion. And, obviously, if that were to happen again, that would be a clear threat to the community."

¶ 9         The trial court entered a written order for detention. In support of its finding "less restrictive conditions would not assure safety of *** the community," the court wrote: "as stated in open court. Defendant has multiple mental health issues which are being addressed in the jail and is alleged to have actually stabbed the alleged victim."

¶ 10        This appeal followed.

¶ 11                                        II. ANALYSIS

¶ 12        On December 13, 2023, defendant filed a notice of appeal challenging the order denying her pretrial release under Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023). She also filed an accompanying memorandum.

¶ 13        On appeal, defendant first argues the trial court erred in denying her pretrial release as the State did not prove by clear and convincing evidence she poses a real and present threat to the safety of any persons or persons or the community. On the notice-of-appeal form, defendant provided the following, emphasizing the word "present": "Insufficient facts alleged in State's proffer. Did not address the fact that she is not a *present* threat to the community." (Emphasis in original.) In her memorandum, defendant provides additional argument, emphasizing the absence of any evidence she is a danger to the community as she was free of her trafficker's influence, she assisted in the police investigation, and her mental illness was under control through medication. Defendant further emphasized the Pretrial Fairness Act did not authorize courts to detain defendants for their own well-being.

¶ 14        Under the Code, all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). This presumption applies to even those accused of violent offenses, and the State must justify pretrial detention. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18. To deny a defendant pretrial release under section 110-6.1(e)(1)-(3) of the Code (725 ILCS 5/110-

6.1(e)(1)-(3) West 2022)), as the State sought here, the State must prove by clear and convincing evidence "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(2). Factors that are to be considered by a trial court in determining dangerousness include the following:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. ***

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release ***.

(9) Any other factors *** deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.* § 110-6.1(g).

The threshold for "clear and convincing evidence" is proof that "leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." (Internal quotation marks omitted.) *People v. Bryson*, 2018 IL App (4th) 170771, ¶ 84, 115 N.E.3d 362; see *Bazydlo v. Volant*, 164 Ill. 2d 207, 213, 647 N.E.2d 273, 276 (1995).

¶ 15    We review whether a criminal defendant was properly denied pretrial release for an abuse of discretion. See *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11. This court will find an abuse of discretion when the decision is unreasonable, arbitrary, or fanciful or when we find no reasonable person would agree with the trial court's decision. *Id.* ¶ 10.

¶ 16    Here, we find the trial court did not abuse its discretion in concluding defendant posed a present and real threat to the community. The State's proffer establishes defendant committed a violent offense, participating in the stabbing and death of the victim. It further establishes defendant had a criminal history, which includes a 2020 misdemeanor criminal-damage-to-property charge that includes an allegation defendant attempted to set a residence on fire. While the evidence proffered at the hearing does not identify specific diagnoses, it is clear

- 9 -

defendant suffered severe mental-health issues. Her mental-health condition was so extreme she was found unfit to stand trial and was admitted to DHS for treatment. While the evidence shows defendant's mental health had improved, it was not an abuse of discretion for the trial court to conclude defendant remained a present threat.

¶ 17　　　　Defendant next argues the trial court erred in finding the State proved by clear and convincing evidence no condition or combination of conditions would mitigate the threat defendant posed to the community. Defendant contends the State proffered no evidence on the issue of pretrial conditions and made no argument on this issue. Defendant maintains the court did not address the alternative conditions nor adequately explain why it believed those conditions would not mitigate the threat. Defendant concludes by arguing the court's belief defendant "is doing quite well" in custody does not justify detaining her.

¶ 18　　　　We find the trial court did not abuse its discretion in finding no condition or combination of conditions could mitigate defendant's threat to the community. Given the proffers before the court, it is clear defendant suffered from mental illness and an addiction to crack cocaine at the time she participated in the victim's murder and when she attempted to set a house on fire. That mental illness led her to be found unfit to stand trial and be admitted for treatment. The proffer further establishes defendant has benefitted from that treatment. It was not unreasonable for the court to have concluded defendant's addictions and mental health improved only while in custody and her being a threat to the community would not be mitigated if she returned to the community, even while in the care of her father and his wife.

¶ 19　　　　　　　　　　　　　　III. CONCLUSION

¶ 20　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 21　　　　Affirmed.