NOTICE

Decision filed 02/20/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241324-U

NO. 5-24-1324

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| DAYZI M. FITZTHUM, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 24-SC-570 |
| | ) | |
| BRAD RICE, d/b/a Prestige Construction | ) | |
| Management, and EMILY BROWN, | ) | Honorable |
| | ) | Julia R. Gomric, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Moore* and Barberis concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court's finding that the plaintiff failed to prove defendant Brad Rice d/b/a Prestige Construction Management breached an agreement to perform renovations to the plaintiff's home was not against the manifest weight of the evidence, and the trial court did not abuse its discretion in denying the plaintiff's motion to reconsider and reopen the evidence. The judgment is affirmed.

¶ 2     The plaintiff, Dayzi Fitzthum, filed a small claims action against the defendants, Brad Rice d/b/a Prestige Construction Management (Rice) and Emily Brown, alleging that the defendants owed her $10,000 because of delays and deficiencies in the performance of renovations to the plaintiff's home. The trial court dismissed the plaintiff's claim against defendant Brown with

_____
*Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

prejudice, finding that she had no direct or personal liability for the work of Rice's company. The trial court entered judgment in favor of defendant Rice, finding that the plaintiff failed to prove that Rice breached any written or oral agreement as alleged. The plaintiff's motion to reconsider and to reopen the evidence was denied. The plaintiff appeals from the judgment and the order denying the motion to reconsider. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      This case arose from a dispute between the plaintiff and the defendants regarding the timeliness, quality, and completeness of renovations that defendants made to the plaintiff's home. The parties appeared *pro se* for a bench trial. The plaintiff's evidence consisted of her testimony, along with invoices, receipts, and several text messages. Emily Brown and Rice testified in their defense. An overview of the trial testimony and evidence follows.

¶ 5      On November 3, 2023, the plaintiff and her husband, Alex Fitzthum, closed on the purchase of a home located in O'Fallon, Illinois. At that time, the Fitzthums and their four young children were residing in Ohio. They planned to move into the O'Fallon home on December 29, 2023, and wanted to have some renovations made to the home before the move. The couple's realtor recommended Rice's company. Alex contacted Rice to discuss the project. On or about November 4, 2023, Alex and Rice did a "walk-through" of the O'Fallon home. Alex described the renovations that he and his wife wanted and the amount they budgeted for the work. Alex also indicated that the family planned to move into the home on December 29, and that this was the deadline for completing the renovations. Following the walk-through, Rice prepared an invoice, dated November 7, 2023, billed to Alex Fitzthum. The invoice listed the following jobs and the costs associated with each job: baseboard – $2,562.50; LVP floor – $7,480.13; bathroom extension, Kirby system install, tile shower, vanity and plumbing – $6,000; demo and dumpster rental –

2

$3,200; drywall living room – $1,600; butcher block countertop install – $1,700; and carpet install – 7,847.93. The total cost was $30,390.56. The invoice did not include job specifications or itemized costs of materials and labor for each job. Shortly after sending the invoice to Alex, Rice realized that he inadvertently failed to include the appropriate tax, and he notified Alex of the error. In a text message sent November 7, 2023, Rice informed Alex that the new total was $33,435.62. Alex and Rice agreed that the bill could be paid in three installments.

¶ 6    The Fitzthums sent a "test" payment of $140.19 to Rice's bank using a direct payment application to transfer the funds. When the Fitzthums discovered there was a maximum of $1,000 per transfer, they decided to pay by check. Alex mailed a check, dated November 9, 2023, in the amount of $11,005.02, payable to Prestige Construction Management, for the first installment. Rice received the check on November 16, 2023. In a text exchange that same day, Rice notified Alex that Rice's bank advised there would be a 10- to 14-day hold on the check. Rice offered to drive to Ohio to get a cash payment for the first installment. Rice indicated that the hold would delay the start of the work by two weeks and that he was concerned about meeting the December 29 deadline. In a reply, Alex indicated he was not comfortable with making a cash payment and declined the offer. The check did not clear until November 29, 2023. As a result, the work did not begin until December 1, 2023. Alex sent a second check, dated December 6, 2023, in the sum of $22,290.42, paying the balance of the invoice and associated taxes in full.

¶ 7    The plaintiff introduced several additional text message exchanges between Alex and Rice in November and December of 2023. In these communications, Rice had agreed to perform some additional work on the home that had not been included in the original invoice. In one such exchange on December 15, 2023, Rice indicated that he needed an additional $3,000 to $3,500 to cover the costs for painting materials and labor and a few hundred dollars to install toilets. Alex

3

and Rice agreed that these costs could be paid at the end of the job. On December 28, 2023, Rice texted Alex to determine when the movers would arrive. Rice advised Alex that they still had work to complete. Rice also indicated that the painting costs had not been included in the estimate and that he would need about $5,000, rather than the $3,500 previously quoted, to complete the work.

¶ 8 The plaintiff testified that when they arrived at the O'Fallon home on December 29, 2023, it was clear that the work was far from complete. She stated that the kitchen did not have counters, a sink, or a stovetop, that there were holes in the kitchen backsplash, and that the trim work was not finished. In addition, the upstairs carpet had not been ironed out or tacked down, the blinds were not hung, some doors were not on their hinges, and the downstairs bathroom was not functional. The plaintiff stated that she began to communicate with Rice because Alex had to return to Ohio to finish his work there, and that she and Rice came to an agreement that all work would be completed by January 16, 2024. In early January 2024, the plaintiff sent a text message to Rice and laid out a punch list of items that she wanted him to complete. Some of the items had been listed in the original invoice, some had been noted in text exchanges between Alex and Rice, and some were new items that had never been discussed. On January 11, 2024, Alex texted Rice and told him that the work needed to be completed within the next six or seven days. Alex also stated that he and his wife wanted to unpack and clean on the weekend of January 19, 2024. The very next day, the plaintiff then texted Rice about the status of the job. After multiple rounds of texts between Rice and the plaintiff, Rice sent a text and stated that he needed the plaintiff to let him run the project. Rice also stated that the plaintiff had to stop pulling him from his work to perform "touch ups," noting that this was slowing the process. On January 25, 2024, Rice texted Alex and provided a day-by-day breakdown of the work that remained. Rice stated that he would like to complete the job. In a reply, Alex indicated that he understood Rice's situation, but he was not

4

confident that Rice could finish the job in a timely manner and thought it was best "to cut ties." On January 26, 2024, Rice went to the O'Fallon home and collected his tools.

¶ 9    The plaintiff testified that Rice failed to do the work he was paid to do, that the quality of some work was inadequate, and that the work was not completed by the deadline or within a reasonable time thereafter. As a result, she obtained estimates from other companies to correct deficiencies in Rice's work and to do renovations that Rice had not started. The plaintiff introduced into evidence an estimate from another construction company, dated February 12, 2024. The estimate, totaling $18,200, referenced a full bathroom remodel, installation of French doors, replacement of a kitchen backsplash, and painting and trim work. The plaintiff also introduced the written contract that she signed with that company on March 14, 2024. The written contract totaled $14,984.56 and included pricing for a full bathroom remodel along with miscellaneous repairs, including trim work, painting, and door repair. The plaintiff presented additional receipts for work and materials that she claimed Rice had not completed, including $1,519.80 for a double door unit and installation, $980.65 for installation of a new kitchen sink, and $4,404.92 for new carpeting. Neither Alex Fitzthum nor any representative from the new construction company testified in the plaintiff's case.

¶ 10    Rice and Emily Brown presented their defense. Rice testified that Prestige Construction Management was an LLC. The company was originally incorporated in Illinois. In November 2023, Rice decided to incorporate in Missouri for tax and business purposes. Brown testified that Rice owned Prestige Construction Management, and that she helped Rice out on projects and with paperwork. She had no ownership interest in the company.

¶ 11    Brown and Rice addressed the plaintiff's allegations regarding the delays and the alleged deficiencies in the quality of the work. Brown acknowledged that Alex had advised them that the

5

Fitzthum family planned to move into the O'Fallon home on December 29, 2023. Brown confirmed that Rice had notified Alex that the requested work would take about six to eight weeks. Rice also advised that he thought he could complete the project within the December 29 deadline if he started the work around November 11, 2023, and that he could not begin the work until he received the first installment payment. Brown testified that she was present for a phone conversation in which Rice notified Alex that there would be a 10- to 14-day hold on Alex's check. During this conversation, Rice indicated that he would not be able to complete all the work by the December 29 deadline.

¶ 12    Brown noted that the original invoice did not include the cost for painting the house. She explained that the estimate for painting increased because the plaintiff wanted a two-tone design and chair railing in the living room and the kitchen. Brown also noted that the Fitzthums' movers damaged some of the walls as they moved boxes into the house, and that the movers stacked boxes in some of the rooms, making it difficult to access those spaces to complete the work. Brown stated that the plaintiff began to micromanage the work. The plaintiff pulled workers from their assigned tasks and directed them to do touch-ups, resulting in delays. Brown recalled that things began to get "heated" and the plaintiff screamed at her.

¶ 13    Brown and Rice both testified that the plaintiff asked them to do additional work that was not included in the original invoice. For example, at the plaintiff's request, Rice purchased and installed a microwave oven, a garbage disposal, and additional blinds. Rice addressed the plaintiff's contention that she had to hire other companies to correct deficiencies and complete work that was not done. Rice testified that he had two days of work left when his services were terminated. Rice stated that in his experience when a customer hires a new contractor, the customer often wants the new contractor to tear everything out and start over. Rice pointed to the price

6

differences between his estimate and the new construction company's estimate for remodeling the bathroom. He noted that the plaintiff made upgrades, including increasing the size of the shower and choosing a more expensive drainage system, a more expensive vanity, and more expensive hardware. Rice stated that the plaintiff submitted an invoice that included rerouting plumbing for a new kitchen sink. In addition, the plaintiff submitted an invoice covering the installation of new carpet, rather than completing the tacking down of the carpet that he had laid. Rice also contested specific claims regarding deficiencies in his work.

¶ 14    At the close of the defendants' testimony, the plaintiff was given an opportunity for rebuttal. She responded to the testimony of the defendants, reiterating her earlier testimony. The trial court took the matter under advisement. In a written order entered October 17, 2024, the trial court found that Emily Brown was an employee of Rice's company and that she had no direct or personal liability for the work of that company. The court dismissed the plaintiff's claim against Brown with prejudice, and that order was not appealed. Next, the court found that the plaintiff did not enter into a written or oral agreement with Rice and that she was not privy to all of the conversations between her husband, Alex, and Rice. Based upon the plaintiff's own evidence, the court also found the plaintiff increased the size and scope of the bathroom remodeling project, that she purchased new materials and hired a plumber to do several tasks, and that none of these items was contemplated at all or in the same scope as the original invoice or oral agreements between Alex and Rice. The court concluded that given the delay in the original payment and the extensive changes and additions requested by the Fitzthums during the construction process, as well as the directive that Rice not finish the work, the plaintiff did not meet her burden to prove that Rice breached any oral or written contract. The court entered judgment in favor of Rice.

7

¶ 15    On November 14, 2024, the plaintiff filed a motion to reconsider the judgment and to reopen the evidence. The plaintiff attached unsworn statements from Alex, three relatives, and a neighbor, along with additional text messages, in support of her motion. On November 18, 2024, the trial court denied the plaintiff's motion to reconsider. The court determined that the attached information could have been presented at the time of trial and that none of the information changed the court's judgment. The plaintiff retained counsel and filed this appeal.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, the plaintiff claims that the trial court erred in finding (a) that there was no written or oral agreement between the plaintiff and Rice to renovate the bathroom in the plaintiff's home and (b) that Rice did not breach any written or oral agreement to renovate the bathroom in the plaintiff's home. The plaintiff also claims that the trial court erred in denying the plaintiff's motion to reconsider and to reopen the evidence.

¶ 18    As an initial matter, we note that the defendant, Brad Rice d/b/a Prestige Construction Management, did not file an appellee's brief. In such a circumstance, where the record is simple and the claimed errors can be decided easily without the aid of the appellee's brief, the reviewing court should decide the appeal on the merits. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Here, we have determined that the record is clear enough and the claimed errors can be decided without the aid of an appellee's brief. Accordingly, we will decide the issues raised in this appeal on the merits.

¶ 19    In a case tried without a jury, the trial judge is required to weigh the evidence and make findings of fact. *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 483 (2002). Generally, when a party challenges the trial court's ruling after a bench trial, the reviewing court defers to the trial court's factual findings unless those findings are against the manifest weight of the evidence.

8

*Bazydlo v. Volant*, 164 Ill. 2d 207, 214-15 (1995). This is because the trial judge, as the trier of fact, is in the best position to observe the witnesses as they testify, to assess the credibility of the witnesses, and to determine the weight their testimony should receive. *Bazydlo*, 164 Ill. 2d at 214-15. A judgment is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the findings appear to be arbitrary, unreasonable, or not based on the evidence. *Bazydlo*, 164 Ill. 2d at 215. Therefore, a reviewing court will not overturn a trial court's findings simply because it does not agree with the trial court or because it might have reached a different conclusion had it been the trier of fact. *Bazydlo*, 164 Ill. 2d at 214. A reviewing court will not disturb the findings and judgment of the trier of fact if there is any evidence in the record to support those findings. *Nokomis Quarry Co.*, 333 Ill. App. 3d at 484.

¶ 20    A valid contract must contain an offer, an acceptance, and consideration. *Ogle v. Hotto*, 273 Ill. App. 3d 313, 319 (1995). To be enforceable, the agreement must be sufficiently definite so that its terms are reasonably certain and able to be determined. *Ogle*, 273 Ill. App. 3d at 319. The existence of a contract, its terms, and the intent of the parties are questions of fact to be determined by the trier of fact. *Arbogast v. Chicago Cubs Baseball Club, LLC*, 2021 IL App (1st) 210526, ¶ 19. When there is no dispute as to the facts essential to a purported contract, then the existence of a contract is a question of law to be decided by the court. *Ogle*, 273 Ill. App. 3d at 319-20.

¶ 21    To prevail on a claim for breach of contract, the plaintiff must establish the existence of a valid and enforceable contract, performance by the plaintiff, a breach of contract by the defendant, and the existence of damages as a result of the breach. *Timan v. Ourada*, 2012 IL App (2d) 100834, ¶ 24. Whether a breach of contract occurred is a question of fact, and the trial court's factual finding

9

will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Timan*, 2012 IL App (2d) 100834, ¶ 24.

¶ 22 In this case, there was no evidence of a formal written contract signed by the parties, and the plaintiff's complaint admitted there was no written contract. The invoice from Prestige Construction Management identified the work that Alex and Rice had discussed during the initial walk-through in November 2023. Although Alex was not called as a witness, several text messages between Alex and Rice were admitted into evidence and those communications referenced the renovations that Rice had agreed to perform, the estimated cost of $33,390.56, and the deadline of December 29, 2023. The text messages also indicated that the plaintiff and Alex accepted Rice's bid for the project. The first installment payment was made to Rice from the Fitzthums' bank account. Thus, there was evidence of an offer, acceptance, and consideration for the initial oral agreement. Although the trial court's order is somewhat confusing on this point, we conclude that the trial court determined that at least initially, there was an oral agreement between the Fitzthums and Rice.

¶ 23 The trial court then proceeded to consider whether there was a breach of that oral agreement. The undisputed evidence at trial established that the project was delayed because it took two weeks for the Fitzthums' check to clear. The text messages offered by the plaintiff showed that Rice was concerned about the two-week delay given the December 29 deadline and communicated that concern to Alex. There is no evidence that the plaintiff or Alex sought to cancel the work at that time. In addition, multiple text messages exchanged between Alex and Rice through November and December of 2023 indicate that the Fitzthums requested additional work that had not been part of the original agreement and that Rice agreed to perform that work. There is no evidence that either party questioned how the additional work, coupled with the previous

10

two-week delay, might impact the timeline for completion of the project. The trial court found that the scope of the renovations changed over the course of the project. Some of the changes and additions were not contemplated at all and some did not fit within the scope of the work set out in the original invoice. The conflicting testimony from the plaintiff and the defendants, in conjunction with the documentary evidence and the text messages, indicated that even though the parties may have reached an earlier agreement regarding the renovations, the specifications and the scope of the work changed during the course of the project and the parties had different expectations regarding those changes. This substantial change to an essential term of original agreement, *i.e.* the specifications and the scope of the work, created uncertainty about what the parties had agreed to do. After reviewing the record, we conclude that the trial court's finding that the plaintiff failed to meet her burden to prove Rice breached the contract was not against the manifest weight of the evidence.

¶ 24    The plaintiff also claims that the trial court erred in denying the plaintiff's motion to reconsider and to reopen the evidence. The purpose of a motion to reconsider is to bring to the trial court's attention newly discovered evidence not available at the time of the hearing, changes in the law, or errors in the court's previous application of existing law. *In re Marriage of Heinrich*, 2014 IL App (2d) 121333, ¶ 55; *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1140 (2004). When a motion to reconsider is based on evidence not presented during the trial, the decision to grant or deny the motion is a matter within the discretion of the trial court and we will not disturb that ruling absent an abuse of discretion. *Spencer v. Wayne*, 2017 IL App (2d) 160801, ¶ 25. The trial court should not permit an unsuccessful party to frantically gather evidentiary material that it could have presented during the original proceeding to show that the trial court

11

erred in its ruling. *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248 (1991).

¶ 25    The decision whether to grant or deny a motion to reopen proofs is within the trial court's discretion and that decision will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Sawicki*, 346 Ill. App. 3d 1107, 1120 (2004); *Stringer*, 351 Ill. App. 3d at 1141. In determining whether a party should be permitted to reopen proofs, the trial court may consider whether the failure to present the evidence occurred due to inadvertence or calculated risk, whether granting the motion would result in surprise or unfair prejudice to the opposing party, whether the evidence is of the utmost importance to the moving party's case, and whether any cogent reason exists to justify denying the request. *Stringer*, 351 Ill. App. 3d at 1141. Further, if the evidence offered for the first time in a posttrial motion could have been produced at an earlier time, it is not an abuse of discretion for the trial court to deny the introduction of the evidence. *In re Marriage of Sawicki*, 346 Ill. App. 3d at 1120; *Stringer*, 351 Ill. App. 3d at 1142.

¶ 26    In this case, the plaintiff filed a motion to reconsider and to reopen evidence. She attached additional receipts, text messages, a typed, unsworn statement of Alex Fitzthum, and unsworn statements from three relatives and one neighbor of the Fitzthums in support. The trial court reviewed the motion and determined that the attached information could have been presented at the time of trial and that none of the new information changed the court's ruling. After reviewing the record, we do not find that the trial court abused its discretion in denying the plaintiff's motion to reconsider and to reopen the evidence.

¶ 27                                    III. CONCLUSION

¶ 28    For the reasons stated, the judgment is affirmed.

¶ 29    Affirmed.

12